STATE OF CONNECTICUT *v.* ANTHONY J. BZDYRA

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued October 9—decided November 6, 1973

*Igor I. Sikorsky, Jr.,* for the appellant (defendant).

*George D. Stoughton,* chief assistant state's attorney, with whom, on the brief, was *John D. LaBelle,* state's attorney, for the appellee (state).

MacDonald, J. On April 20, 1972, the defendant, Anthony J. Bzdyra, shot and killed his brother Chester Bzdyra. He was charged with manslaughter in the first degree in violation of § 53a-55 (a) (1) of the General Statutes and, on a trial to the court, was found guilty as charged. He has appealed to this court from the judgment.

Although the defendant has made ten assignments of error, he has briefed only the claim that the court erred in finding that the state had proved the defendant guilty beyond a reasonable doubt in that it had failed to prove intent, one of the elements of the crime charged. This claim is contained in several of the assignments of error. The remaining assignments, not having been briefed, are treated as abandoned. *Housing Authority* v. *Dorsey,* 164 Conn. 247, 248, 320 A.2d 820; *State* v. *Kohlfuss,* 152 Conn. 625, 635, 211 A.2d 143; Maltbie, Conn. App. Proc. § 327.

The court found the following facts, none of which is disputed in this appeal: The defendant called his brother to pick him up at the residence of Juanita Hagins at about noon of April 20, 1972. The brothers left together and returned to the Hagins residence at about 7 p.m., at which time the defendant was armed with a shotgun and with a pistol in his belt. He threatened to kill Juanita Hagins and her children and took out the pistol—behavior which frightened Linda Hagins, the daughter of Juanita. The two brothers left the house and returned again

at about 8:15 p.m. The defendant had the pistol in his pants. The defendant went upstairs, and then came back and told his brother, who was watching television, to go upstairs with him. The defendant called Juanita Hagins and asked for shells for the shotgun, which she gave him. Ten or fifteen minutes later Juanita Hagins heard the sound of a gunshot. Juanita went upstairs and found Chester Bzdyra lying across the foot of her bed, still alive. Juanita Hagins said that the defendant told her that he had had a stupid accident and shot his brother. The defendant had the gun in his pocket but then took it out. Juanita told the defendant to call an ambulance and to get Chester to the hospital. He said that he should finish killing his brother because he was no good. After Juanita had gone downstairs, Linda Hagins heard a noise which sounded like a bump. When the police arrived shortly after 9 p.m., the body of Chester Bzdyra was still in the house, but was lying on the floor in the bedroom. Although Juanita Hagins testified that she had seen no wound, the police found the body on the floor in a large amount of blood. There was blood on the back of the neck, on a jacket, on the bed, and on the floor next to the body. When the defendant was apprehended by the police, he was walking, completely sober, toward his residence, four or five miles from the place of the shooting, and he had bloodstains on his shirt. When the police found the body of Chester Bzdyra, they noticed that two buttons which they found in the room had been ripped from his shirt. The bullet which killed Chester Bzdyra struck him in the neck and traveled downward through the right lung to the back. The police were unable to find the gun which had been used to fire the fatal bullet. At the trial the defend-

ant's father and brother Edward both stated that there were no quarrels between Chester and the defendant.

Section 53a-55 (a) provides that "[a] person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person. . . ." There is no question that it was incumbent upon the state to prove a specific intent to cause serious physical injury because intent to achieve a result is an element of the crime charged. *State* v. *Bitting,* 162 Conn. 1, 5, 291 A.2d 240. The defendant maintains that no evidence was introduced to show the existence of that specific intent and that the court was in error in inferring intent from the nature of the crime and the circumstances of the killing.

Intent may be, and usually is, inferred from conduct. *State* v. *Cofone,* 164 Conn. 162, 164, 319 A.2d 381; *State* v. *Smith,* 157 Conn. 351, 354, 254 A.2d 447. Intention is a mental process, and of necessity it must be proved by the statements or actions of the person whose act is being scrutinized. *State* v. *Cofone,* supra, 164; *State* v. *Mazzadra,* 141 Conn. 731, 735, 109 A.2d 873. A person's intention is to be inferred from his conduct; *Kiernan* v. *Borst,* 144 Conn. 1, 6, 126 A.2d 569; and generally can be proved only by circumstantial evidence. *State* v. *Sul,* 146 Conn. 78, 87, 147 A.2d 686. "The law recognizes no distinction between circumstantial evidence and direct evidence so far as probative force is concerned." *State* v. *Smith,* 138 Conn. 196, 200, 82 A.2d 816. Intent is a question of fact, the determination of which should stand unless the conclusion drawn by the trier is an unreasonable one. *State*

v. *Farrah,* 161 Conn. 43, 49, 282 A.2d 879. Thus the only real question presented by this appeal is whether the trial court reasonably could have inferred that the defendant had the intent to commit serious bodily injury when he shot his brother.

The statements and conduct of the defendant and the totality of the circumstances surrounding the killing convince us that the inference was properly drawn. While none of the facts presented in this case, taken singly, is decisive on the issue of intent, the cumulative effect of a number of salient facts was sufficient to permit the trier to find that intent had been proved. The first of these facts was the use of a gun. "One who uses a deadly weapon upon a vital part of another will be deemed to have intended the probable result of that act, and from such a circumstance a proper inference may be drawn in some cases that there was an intent to kill. Wharton on Homicide (3d Ed.) pp. 7, 115. 'Any inference that may be drawn from the nature of the weapon and the manner of its use, is an inference of fact to be drawn by the jury upon a consideration of these other circumstances.' *State* v. *Taylor,* 70 Vt. 1, 9, 39 Atl. 447." *State* v. *Litman,* 106 Conn. 345, 352, 138 A. 132.

In addition to the use of a deadly weapon, with which the defendant had earlier threatened the life of Juanita Hagins and her children, there were numerous "other circumstances" supporting the inference of intent. The defendant called his brother to join him upstairs and shortly thereafter asked for shells for the shotgun. His behavior prior to that time can only be described as threatening, and he had succeeded in frightening Linda Hagins. The shooting occurred shortly after Chester had been

summoned upstairs. The fact that the buttons had been ripped off the shirt of the victim, particularly in light of the aforementioned behavior of the defendant, justified the court's conclusion that some sort of struggle had occurred.

Of major importance were the facts demonstrating that the bullet which killed Chester Bzdyra struck him in the neck and traveled downward through the right lung to the back, and that Juanita Hagins saw the body lying on the bed. These facts justify the conclusion that the victim was shot from above while lying on the bed, a circumstance entirely consistent with an intentional shooting. The location and path of a fatal bullet are material and relevant to show intent, are a proper part of the state's thesis, and can contribute to the supportability of the decision of the trier of fact on that issue. *State* v. *Bucanis,* 26 N.J. 45, 55, 138 A.2d 739, cert. denied, 357 U.S. 910, 78 S. Ct. 1157, 2 L. Ed. 2d 1160; *State* v. *Oakes,* 129 Vt. 241, 259, 276 A.2d 18, cert. denied, 404 U.S. 965, 92 S. Ct. 340, 30 L. Ed. 2d 285.

After the shooting, the defendant failed to call an ambulance after having been told to do so by Juanita Hagins, stated that he should finish killing his brother because he was no good and, it can reasonably be concluded, concealed and disposed of the weapon. Declarations and conduct of the accused after a killing may be considered by the trier of fact if they tend to show his intent, and, if they indicate hostility to the deceased, they are some evidence of that intent. *Gentry* v. *State,* 172 Tex. Crim. 345, 348, 356 S.W.2d 793; 40 C.J.S., Homicide, § 211; 2 Warren, Homicide (Perm. Ed.) § 202; 3 id. § 273; see also *Giannattasio* v. *Silano,* 115 Conn. 299, 303, 161 A. 336; *State* v. *Weiner,* 84 Conn. 411, 417, 80 A. 198.

Here the statements and conduct of the defendant clearly indicated hostility and were thus some evidence of his intent to inflict serious bodily injury on the deceased.

All of the foregoing factors, taken together, make it clear that the inference of intent was not unreasonably drawn. The defendant nonetheless contends that intent was not shown beyond a reasonable doubt. The requirement that evidence must be such as satisfies beyond a reasonable doubt does not mean that proof must be beyond a possible doubt; *State* v. *Smith,* 138 Conn. 196, 201, 82 A.2d 816; and "a possible supposition of innocence is a far different thing from a reasonable hypothesis." *State* v. *McDonough,* 129 Conn. 483, 485, 29 A.2d 582. The defendant essentially is arguing that it is reasonable to hypothesize that the shooting was an accident. The only evidence in support of this proposition was testimony to the effect that there were no quarrels between the defendant and Chester, and the testimony of Juanita Hagins that the defendant told her shortly after the killing that he had had an accident. The fact that there was no preexisting quarrel between the brothers might be probative if the issue were one of motive, or the lack thereof, for a premeditated murder, but it is not of significant value on the issue of intent in the type of killing involved in the case before us. Furthermore, the trial court specifically concluded that the testimony of Juanita Hagins concerning the defendant's statements as to an accident was not credible. The trier of fact is the judge of the credibility of witnesses; *State* v. *Farrah,* 161 Conn. 43, 49, 282 A.2d 879; and nothing which would prompt us to displace the trier in carrying out that function has been called to our attention. More-

over, the downward path of the bullet and the other surrounding circumstances of the crime which we have noted make the suggestion of an accident at best a remotely possible supposition of innocence, but most certainly not such a reasonable hypothesis of innocence as would require us to reverse the trier's determination of a factual issue.

There is no error.

In this opinion the other judges concurred.