STATE OF CONNECTICUT *v.* JAMES HOLLEY

HOUSE, C. J., COTTER, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued October 18—decision released November 29, 1977

*William M. Shaughnessy,* public defender, with whom, on the brief, was *James D. Cosgrove,* chief public defender, for the appellant (defendant).

*C. Robert Satti,* acting state's attorney, for the appellee (state).

COTTER, J. The defendant was charged with murder by force or deception in violation of § 53a-54 (a) (1)[1] of the General Statutes then in effect.[2] He elected trial to a court of three judges. General Statutes § 54-82. The court found him guilty as charged and he has appealed. Error is assigned in the conclusion of the court that, based upon all the evidence, the defendant was guilty of the crime charged beyond a reasonable doubt.

---

[1] See 53a-54a (a) of the General Statutes.

[2] The defendant was also charged with having a dangerous weapon in a motor vehicle occupied by him in violation of § 29-38 of the General Statutes; he has not appealed his conviction on that charge.

## I

Such a claim is tested by reviewing the evidence printed in the appendices to the briefs together with such exhibits as are made part of the record on appeal. *State* v. *Chisolm,* 165 Conn. 83, 84; 328 A.2d 677. Applying that test to the present case, we find that the trial court had before it evidence sufficient to establish the following facts.

On the evening of March 31, 1973, a fistfight broke out between the defendant and Frank Oliver near a local bar in Middletown. After the two were separated, the defendant remarked: "Just wait here. I'll be back," while Oliver was heard to have threatened to kill the defendant. After leaving, the defendant went home and obtained a .22-caliber rifle and returned to the bar with the gun apparently looking for Oliver. Unable to find Oliver there, he obtained a ride back to his house, and then went to the apartment of one of his friends who picked up a shotgun which was placed in the car in which the defendant and his four companions were traveling. Upon returning to the south end of town, the defendant directed the driver of the automobile to park at the curb close to the local bar near which he and Oliver had their earlier altercation.

While the defendant was seated in the front passenger seat of the parked car, the victim, Frank Oliver, approached the car with a rifle in his hand and pointed the weapon in the defendant's direction. Observing the commotion from about seventy-five yards away, a friend of Oliver, Philip Perkins, approached him and, hearing Oliver ask the driver of the vehicle whether he had insurance on the car, told him to "Be cool." The defendant then told

Perkins, "[W]e're going to kill you, too." At this point, a police cruiser passed by and Oliver remarked, "It's all over with. Forget about it, man." Oliver put his gun by his side with the muzzle pointing down and was looking away from the defendant when someone in the car yelled "Hey, Frank." With his shotgun pieced together, the defendant, at this time, fatally shot Frank Oliver out of the three-and-one-half- to four-inch opening in the window nearest him just as the car in which he was riding was pulling away from the scene. The decedent was standing between eight and fourteen feet away from the muzzle of the defendant's shotgun when he received the shotgun wounds to the right side of his face and neck which resulted in his death.

## II

The defendant argues that the state did not prove beyond a reasonable doubt that he possessed the requisite statutory mental state, "the intent to cause death"; he claims that the facts established by the evidence were susceptible of the reasonable explanation of "duress" in that "he was threatened with imminent use of physical force" which "he would have been unable to resist," therefore supporting only a mental state required of a lesser included offense with which he had not been charged.

It was incumbent upon the state to prove, beyond a reasonable doubt, that the defendant possessed the specific intent to cause the death of Frank Oliver, the intent to achieve this result being an essential element of the crime charged. *State* v. *Bzdyra,* 165 Conn. 400, 403, 334 A.2d 917; *State* v. *Bitting,* 162 Conn. 1, 5, 291 A.2d 240. Since a determination of the defendant's intent involves an examination of

his mental state, however, it necessarily must be proved by his statements or actions. *State* v. *Sober,* 166 Conn. 81, 93, 347 A.2d 61; *State* v. *Cofone,* 164 Conn. 162, 164, 319 A.2d 381; *State* v. *Mazzadra,* 141 Conn. 731, 735, 109 A.2d 873. "Intent may be, and usually is, inferred from conduct"; *State* v. *Cofone,* supra; and every person is conclusively presumed to intend the natural and necessary consequences of his acts. *State* v. *Smith,* 157 Conn. 351, 354, 254 A.2d 447. The intent of the actor is a question for the trier of fact, and the conclusion drawn by the trier in this regard should stand unless it is an unreasonable one. *State* v. *Ruiz,* 171 Conn. 264, 271, 368 A.2d 222; *Hartford Accident & Indemnity Co.* v. *South Windsor Bank & Trust Co.,* 171 Conn. 63, 72, 368 A.2d 76; *State* v. *Bzdyra,* supra.

Under the circumstances, the conclusion that the defendant formed "an intent to cause death" is reasonable and logical. The manner in which the defendant used the shotgun and killed the victim supports such a conclusion. "One who uses a deadly weapon upon a vital part of another will be deemed to have intended the probable result of that act, and from such a circumstance a proper inference may be drawn in some cases that there was an intent to kill. Wharton on Homicide (3d Ed.) pp. 7, 115." *State* v. *Litman,* 106 Conn. 345, 352, 138 A. 132; *State* v. *Bzdyra,* supra, 404. Likewise, the use of a deadly weapon at close range, the facts that the defendant had a fistfight with the victim earlier that evening, went home and returned to the scene with a gun looking for him, assembled the shotgun while the victim was standing alongside the car in which he was sitting, remarked to a third party that "we're going to kill you, too," and fired the weapon out of a three-and-one-half- to four-inch

opening in the window as the vehicle was moving away, lead us to conclude that the court could reasonably and logically infer that the defendant had the specific intent to cause Oliver's death and not simply the intent to inflict serious physical injury as the defendant suggests.

Nor can we agree with the defendant that Oliver's possession of a gun coupled with his earlier threatening remarks preclude a conclusion that the defendant in shooting Oliver intended to cause his death. The defendant argues that the evidence presented supports his assertion that his use of the shotgun was only in response to the victim's threatened imminent use of physical force upon him from which he was unable to retreat and was not an intentional killing. He contends that, under these circumstances, it was error for the trial court to conclude that the state met its burden of proving the specific intent required under the provisions of the statute.

The defendant submits that the evidence adduced at trial showed that Oliver was pointing a gun at him and coerced him by the threatened use of the weapon, and that he was unable to retreat from Oliver's imminent threat of deadly force. A review of the evidence printed in the appendices to the briefs together with relevant portions of the trial transcript, however, reveals the existence of substantial evidence antithetical to the defendant's version of the facts. For example, four eyewitnesses to the shooting testified that Oliver had his gun at his side with the muzzle pointing down when he was killed; three of these witnesses stated that the deceased was looking away from the defendant at the time, which fact is supported by the location of

the wounds sustained; there was evidence that the victim indicated his intention to withdraw from the confrontation just prior to the shooting; and there was testimony that the car in which the defendant was riding was moving away from the scene at the time the shotgun was fired. An examination of the above facts leads us to the conclusion that the trial court could properly determine that the defendant did not reasonably believe that Oliver was about to use deadly physical force or inflict great bodily injury when the fatal shot was fired.

Proof beyond a reasonable doubt does not require proof beyond all possible doubt; *State* v. *Hicks,* 169 Conn. 581, 585, 363 A.2d 1081; *State* v. *McDonough,* 129 Conn. 483, 485, 29 A.2d 582; but must exclude every reasonable supposition of innocence. *State* v. *Bzdyra,* supra, 406. The defendant's testimony that he only intended to frighten or injure the decedent was for the trial court to weigh along with all the other evidence before it. It is well settled that the trier of fact is the judge of the credibility of witnesses; *State* v. *Farrah,* 161 Conn. 43, 49, 282 A.2d 879; and that the accused's personal interest in the outcome of the case may properly be considered as bearing upon the credibility of his testimony. *State* v. *Bennett,* 172 Conn. 324, 335, 374 A.2d 247; 81 Am. Jur. 2d, Witnesses, § 667. From a review of the evidence presented, we cannot say that the court erred in concluding that the state proved beyond a reasonable doubt that, as charged, the defendant intended to cause Oliver's death.

There is no error.

In this opinion the other judges concurred.