STATE OF CONNECTICUT *v.* DOMINIC DIDOMINIC

APPELLATE SESSION OF THE SUPERIOR COURT

FILE No. 1138

Argued November 16, 1982—decided January 14, 1983

*Karen F. Tross,* with whom, on the brief, was *Howard A. Jacobs,* for the appellant (defendant).

*Lawrence J. Tytla,* special deputy assistant state's attorney, with whom, on the brief, were *Thomas O'Keefe,* assistant state's attorney, and *Carl Schuman,* assistant state's attorney, for the appellee (state).

PER CURIAM. The defendant has appealed from his convictions of larceny and conspiracy. The relevant facts are as follows: The defendant is the owner of a diner on Middletown Avenue in New Haven. The diner is located a few hundred yards from the New Haven city incinerator. In 1979 the defendant entered into an informal agreement with his friend Peter Gogliettino, a trash collector employed by the city of New Haven. At the time, Gogliettino's wife was suffering from cancer and was unable to cook his meals. Gogliettino agreed to pick up the defendant's trash in his station wagon on his way to the incinerator where the truck on which he made his daily rounds was kept. In return, the defendant furnished him with breakfast without charge.

In early 1980, members of the New Haven police force received a complaint from the director of the department of sanitation that a city garbage truck was being used to collect the defendant's trash in violation of a departmental rule prohibiting the use of city trucks to collect commercial trash. In response to this complaint, two New Haven police officers set up surveillance of the defendant's diner in the early morning hours of January 24, 25, 26 and 28, and of February 11 and 22, 1980. On all but one of these occasions, the officers observed that the department of sanitation truck no. 149 was used to collect the defendant's garbage. They did not, however, see the defendant or know whether he was present on any of these dates. On the other occasion, February 22, Gogliettino's station wagon was used. On the basis of these observations, a warrant was obtained for the defendant's arrest. He was charged with larceny in the fourth degree in violation of General Statutes § 53a-125 and with conspiracy to commit larceny in the fourth degree in violation of General Statutes §§ 53a-48 and 53a-125. He was convicted on both counts.

The defendant's principal contention on appeal is that the evidence presented at trial was insufficient to sustain the court's finding of guilty beyond a reasonable

doubt. We believe there is merit in this claim. Larceny is defined in General Statutes § 53a-119. The subsection under which the defendant was tried and convicted was § 53a-119 (7) (6) which defines larceny by theft of services.[1] That subsection provides: "(7) Theft of services. A person is guilty of theft of services when: . . . (6) obtaining or having control over labor in the employ of another person, or of business, commercial or industrial equipment or facilities of another person, knowing that he is not entitled to the use thereof, and with intent to derive a commercial or other substantial benefit for himself or a third person, he uses or diverts to the use of himself or a third person such labor, equipment or facilities."[2] In order to obtain a conviction under this statute, the state must prove beyond a reasonable doubt that the defendant used or diverted to his own use the labor, equipment or facilities of another "with intent to derive a commercial or other substantial benefit for himself or a third person . . . ."

Intent is usually inferred from conduct. *State* v. *Cofone,* 164 Conn. 162, 164, 319 A.2d 381 (1972). It is a question of fact for the trier, and the conclusion drawn by the trier in this regard should stand unless it is unreasonable or illogical based upon the facts found. *State* v. *Holley,* 174 Conn. 22, 26, 381 A.2d 539 (1977). A review of the transcript of the trial reveals no evidence which would permit the inference that the defendant intended to derive a commercial benefit from this transaction. Rather, the only evidence presented as to the defendant's intent in this regard was to the contrary. The defendant testified that prior to entering into the agreement with Gogliettino he paid a

[1] The defendant never requested a bill of particulars. It is clear from the transcript and briefs, however, that § 53a-119 (7) (6) was the section under which the parties were proceeding throughout the trial.

[2] Initially, a question is raised as to the applicability of § 53a-119 (7) (6) to this defendant since there is a condition precedent that one charged with a violation thereof obtain or have control over labor, equipment or facilities of another. We need not decide that issue today, however, since we find other grounds sufficient to reverse the defendant's convictions.

private collector $50 per month to collect his garbage and that it actually cost him more than that to provide Gogliettino with free breakfast. He also testified that, while he was usually present when the trash was picked up, he remained in his office which was in the back of the diner and which had no windows and that he had no knowledge that a city truck was used on the dates in question. The state produced no evidence which refuted this testimony. Thus, the court's conclusion that the defendant possessed the requisite mental state was unsupported by any subordinate facts found or any reasonable inference that might be drawn therefrom. Therefore, it can not stand.

Similarly, there is no evidence to support the court's conclusion that the defendant was guilty beyond a reasonable doubt of conspiracy to commit larceny. "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy." General Statutes § 53a-48. We are not unmindful of the principle that the state need not prove the existence of a formal agreement between the parties so long as it can show that they " 'knowingly engaged in a mutual plan to do a forbidden act.' *State* v. *Holmes,* 160 Conn. 140, 149, 274 A.2d 153 [1970]." *State* v. *Ortiz,* 169 Conn. 642, 645, 363 A.2d 1091 (1975). Here, however, there was no proof that the act contemplated by the plan or agreement between Gogliettino and the defendant was forbidden. Rather, the uncontroverted testimony was that the agreement called for Gogliettino to collect the trash in his station wagon in exchange for free meals. Since the agreement itself was not to do a forbidden act, the mere fact that on several occasions a city truck was used does not, in our opinion, support the court's conclusion that the defendant was guilty of conspiracy to commit larceny.

There is error, the judgment is set aside and the case is remanded with direction to render judgment that the defendant is not guilty of each count.

DALY, BIELUCH and COVELLO, Js., participated in this decision.