## STATE OF CONNECTICUT *v.* LARRY CHACE
(11201)

PETERS, C. J., HEALEY, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued January 7—decision released March 11, 1986

*Kevin C. Connors,* special public defender, with whom, on the brief, was *Michael J. Whelton,* special public defender, for the appellant (defendant).

*Christopher Malany,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Robert Meyers,* former assistant state's attorney, for the appellee (state).

SANTANIELLO, J. After a trial by jury, the defendant, Larry Chace, was convicted of murder in violation of General Statutes § 53a-54a. The trial court subsequently sentenced him to a term of imprisonment of

not less than seventeen years nor more than life. He appeals claiming (1) that there was insufficient evidence to convict him of murder, (2) that the prosecutor made improper comments to the jury which deprived him of his right to a fair trial, and (3) that he was denied his right to effective assistance of counsel. We find no error.

## I

The defendant first claims that the trial court erred in denying his motions for judgment of acquittal because "the evidence would not permit a finding beyond a reasonable doubt, that the Defendant possessed the intent to kill . . . ." Specifically, he argues that the evidence adduced at trial indicating that the killing occurred in the course of a "heated" argument and while he was intoxicated negated a finding of specific intent.

The jury could reasonably have found the following facts. The victim, Sheldon Merrill, Jr., and a friend, Jay Pietrantonio, were playing pool at the Speak Easy Cafe in Berlin when an argument broke out between Merrill and the defendant over whose turn it was to play. Merrill and the defendant had words and the defendant suggested that they take the argument outside. The defendant left the cafe and Merrill followed shortly thereafter. A few minutes later, Pietrantonio also went outside. He observed the defendant and Merrill facing each other near the front door. Merrill told Pietrantonio that "[e]verything's okay. I'll be in in a minute."

The defendant and Merrill remained outside after Pietrantonio left and continued to argue. At some point, the defendant slapped Merrill in the face and Merrill countered with two or three punches. The defendant then reached into his belt and pulled out a buck knife with a blade over four inches long. He slashed at Merrill

three times, leaving a cut across his cheek and two stab wounds in the chest. When Merrill was stabbed, he staggered backwards and retreated to a corner of the parking lot. The defendant followed, and again slashed at him with the knife. Merrill called out to the defendant to stop and to put the knife away. The defendant, however, replied that: "If I catch you I'll do it again." When Merrill collapsed, the defendant stood over him for a few minutes, calmly put his knife away, walked over to his car and then left.

When emergency medical technicians arrived, Merrill exhibited no vital signs and was bleeding profusely. Efforts to revive Merrill failed. An autopsy revealed that the wound to the face was superficial but that the two wounds to the chest were serious. In causing the two cuts to the chest, the knife passed through a quilted flight jacket, two layers of a flannel shirt and a tee shirt before entering the victim's chest cavity. The first chest wound was one and one-half inches deep and the second was four inches deep. In causing the deeper wound, the knife penetrated the left lung and caused a two-inch laceration of the heart. The position of the chest wounds indicated that the knife struck the victim from a horizontal angle.

It was established that the defendant had been drinking beer for a "couple of hours" before the stabbing, and Pietrantonio testified that he "appeared to be under the influence" at the time. There was no other evidence concerning the defendant's level of intoxication.

Under General Statutes § 53a-54a (a),[1] the state must prove that the defendant acted with the specific intent to cause the death of the victim. *State* v. *D'Antuono,*

[1] General Statutes § 53a-54a (a) provides in pertinent part:
"A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

186 Conn. 414, 422, 411 A.2d 846 (1982). " 'Intent is a mental process which ordinarily can be proven only by circumstantial evidence. An intent to cause death may be inferred from circumstantial evidence such as the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading to and immediately following the death.' *State* v. *Zdanis,* 182 Conn. 388, 396, 438 A.2d 696 (1980), cert. denied, 450 U.S. 1003, 101 S. Ct. 1715, 68 L. Ed. 2d 207 (1981); see *State* v. *Stankowski,* 184 Conn. 121, 127, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981); *State* v. *Holley,* 174 Conn. 22, 26, 381 A.2d 539 (1977); *State* v. *Bzdyra,* 165 Conn. 400, 404–405, 334 A.2d 917 (1973); *State* v. *Litman,* 106 Conn. 345, 352–53, 138 A. 132 (1927). The use of inferences based on circumstantial evidence is necessary because direct evidence of the accused's state of mind is rarely available. *State* v. *Rodriguez,* 180 Conn. 382, 404, 429 A.2d 919 (1980)." *State* v. *Martin,* 195 Conn. 166, 170, 487 A.2d 177 (1985).

Whether a criminal defendant possessed the specific intent to kill is a question for the trier of fact. *State* v. *Holley,* supra, 26. This court will not disturb the trier's determination if, " 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *State* v. *Scielzo,* 190 Conn. 191, 197, 460 A.2d 951 (1983), quoting *Jackson* v. *Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).

The defendant argues that because the stabbing occurred in the course of a "heated" argument, no reasonable jury could have found that he formed the specific intent to kill. Our review of the record in this case reveals, however, that there was sufficient evidence from which the jury could reasonably have found such

an intent. While it is true that the defendant and the victim were engaged in an argument, the quarrel did not appear to have been all that bitter. The argument stemmed from a relatively minor matter and the victim was evidently content to resolve the dispute verbally. The defendant struck the first blow and quickly armed himself with a lethal weapon. He thrust the knife with great force and directed his blows to vital areas, indicating that he purposely sought to cause serious injury or death. Moreover, after initially striking the victim and causing him to retreat, the defendant continued the attack and exhibited little regard for the victim's condition even though it was readily apparent that he was seriously injured. See *State* v. *Martin,* supra, 173; *State* v. *D'Antuono,* supra, 425.

The defendant also claims that it was unreasonable for the jury to have found that he possessed the requisite intent when there was evidence that he was intoxicated at the time of the killing. "Intoxication is not a defense to murder, but is relevant to the capacity to form specific intent. General Statutes § 53a-7; *State* v. *Smith,* 185 Conn. 63, 70 n.7, 441 A.2d 84 (1981); see, e.g., *State* v. *Bitting,* 162 Conn. 1, 7, 291 A.2d 240 (1971). ' "[I]ntoxication" means a substantial disturbance of mental or physical capacities resulting from the introduction of substances into the body.' General Statutes § 53a-7. 'If the cumulative effect of all the evidence, including the evidence of intoxication, justifies finding the particular mental state beyond a reasonable doubt, the . . . verdict precludes a reversal for insufficient evidence of that mental state.' *State* v. *Smith,* supra, 70 n.7; see *State* v. *Crawford,* 172 Conn. 65, 69–70, 372 A.2d 154 (1976)." *State* v. *D'Antuono,* supra, 423–24. In this case, because there was very little evidence concerning the defendant's degree of intoxication, we cannot say that it was unreasonable for the jury to have concluded that the defendant was capable of forming the specific intent to kill.

## II

The defendant's next claim is that the prosecutor made improper demonstrations and comments in his closing arguments to the jury. The state's attorney, in rebuttal to the defense counsel's argument that there was no proof of intent to cause death, used the defendant's buck knife to show how someone might use the knife to inflict minor injury and how one might use it to kill. While making the demonstration, the state's attorney talked about how the knife might be used in fights conducted "from time to time on Saturday nights in Hartford," indicated how he himself would use the knife in a fight and referred to the victim's wounds in relation to different angles of the knife. The state's attorney also referred to the defendant as a "callous and unfeeling murderer," and noted the defendant's calm demeanor and apparent lack of concern for the welfare of the victim. The defendant argues that these comments and actions were prejudicial and deprived him of his constitutional right to due process and a fair trial. Because the defendant has failed to preserve the issue for appeal, however, we do not review his claim.

The defendant concedes, as he must, that the question of prosecutorial misconduct was not raised by his counsel at trial and that no objection was made concerning the remarks. "Only in most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court." *State* v. *Evans,* 165 Conn. 61, 69, 327 A.2d 576 (1973). Arguing that the record adequately supports a claim that he has been deprived of a fundamental constitutional right and a fair trial, the defendant contends that his case presents an "exceptional circumstance" under *Evans.* Id., 70.

Ordinarily, where a criminal defendant does not object and take exception to allegedly prejudicial remarks of the state's attorney, either at the time they were made or at the close of argument, he waives his right to press the claimed error on appeal. *State* v. *Lubesky*, 195 Conn. 475, 484, 488 A.2d 1239 (1985); *State* v. *Malley*, 167 Conn. 379, 387, 355 A.2d 292 (1974). Where counsel fails to object or to request a curative charge "we have presumed that defense counsel did not view the remarks as so prejudicial that his client's right to a fair trial was seriously jeopardized. *State* v. *Lubesky*, supra; *State* v. *Falcone*, 191 Conn. 12, 23 n.13, 463 A.2d 558 (1983)." *State* v. *Tyler-Barcomb*, 197 Conn. 666, 673, 500 A.2d 1324 (1985). After carefully reviewing the record, we cannot say that the prosecutor's remarks and actions in this case were so abusive or prejudicial as to support a claim that the defendant has "clearly been deprived of a fundamental constitutional right and a fair trial."[2] *State* v. *Evans*, supra. The defendant has waived his right to raise the claim on appeal. See *State* v. *Tyler-Barcomb*, supra, 674.[3]

---

[2] The defendant mistakenly relies on *State* v. *Magnotti*, 198 Conn. 209, 502 A.2d 404 (1985) and *State* v. *Evans*, 165 Conn. 61, 327 A.2d 576 (1973), in support of his argument that there has been a colorable deprivation of a fundamental constitutional right and a fair trial. In both *Evans* and *Magnotti* it was claimed that the prosecutor improperly commented on the defendant's failure to testify and, in so doing, directly violated the rule of *Griffin* v. *California*, 380 U.S. 609, 615, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965). While the case at bar similarly involves a claim of prosecutorial misconduct, the claimed improprieties are of lesser magnitude than those in *Magnotti* or *Evans*. See *State* v. *Magnotti*, supra, 215; *State* v. *Evans*, supra, 70. On the record before us, there is simply inadequate support for a claim that the defendant clearly has been deprived of a fundamental right and a fair trial.

[3] Despite our decision finding no error, we express no opinion as to the appropriateness of the state's attorney's comments and actions in this case. We reiterate that all state's attorneys should be circumspect in their characterization of a defendant. *State* v. *Tyler-Barcomb*, 197 Conn. 666, 674 n.4, 500 A.2d 1324 (1985).

## III

The defendant argues finally that if his claim of prosecutorial misconduct has not been properly preserved for appeal, the failure of trial counsel to do so violated his right to effective assistance of counsel. "In order to establish ineffective assistance of counsel it is necessary for the defendant to prove that trial counsel's performance was not reasonably competent or within the range of ordinary training and skill in the criminal law, and if it was not, that such lack of competence contributed to the defendant's conviction." *State* v. *Hinckley,* 198 Conn. 77, 89, 502 A.2d 388 (1985); *State* v. *Rivera,* 196 Conn. 567, 570, 494 A.2d 570 (1985). " 'We have repeatedly held that ineffective assistance claims are more properly pursued in a petition for a new trial or a writ of habeas corpus.' *State* v. *Jacobowitz,* 194 Conn. 408, 413, 480 A.2d 557 (1984). 'Absent the evidentiary hearing available in the collateral action, review in this court of the ineffective assistance claim is at best difficult and sometimes impossible.' *State* v. *Mason,* 186 Conn. 574, 578–79, 442 A.2d 1335 (1982); *State* v. *Tirado,* 194 Conn. 89, 93, 478 A.2d 606 (1984)." *State* v. *Stanley,* 197 Conn. 309, 313, 497 A.2d 46 (1985). On the present record, we cannot determine whether the defendant's trial counsel was reasonably competent and, therefore, we cannot find error on this claim.[4] See *State* v. *Hinckley,* supra, 90.

There is no error.

In this opinion the other judges concurred.

---

[4] The defendant, of course, is not precluded from raising his ineffective assistance of counsel claim in an appropriate collateral proceeding. *State* v. *Hinckley,* 198 Conn. 77, 89, 502 A.2d 388 (1985); *State* v. *Stanley,* 197 Conn. 309, 313, 497 A.2d 46 (1985).