STATE OF CONNECTICUT *v.* BRYAN D. PATTERSON
(13538)

PETERS, C. J., HEALEY, CALLAHAN, COVELLO and HULL, Js.

---

Argued October 10, 1989—decision released February 13, 1990

*John M. Massameno,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Herbert G. Appleton,* assistant state's attorney, for the appellant (state).

*Michael J. McClary,* with whom, on the brief, were *Hugh F. Keefe, John J. Keefe* and *Charles E. Tiernan III,* for the appellee (defendant).

CALLAHAN, J. The issue in this appeal, taken by the state with permission of the trial court; see General Statutes § 54-96;[1] is whether the trial court erred in

---

[1] "[General Statutes] Sec. 54-96. APPEALS BY THE STATE FROM SUPERIOR COURT IN CRIMINAL CASES. Appeals from the rulings and decisions of the superior court, upon all questions of law arising on the trial of criminal cases, may be taken by the state, with the permission of the presiding judge, to the supreme court or to the appellate court, in the same manner and to the same effect as if made by the accused."

dismissing charges of conspiracy to commit murder and conspiracy to commit capital felony pending against the defendant.[2]

The record reveals that the defendant, Bryan D. Patterson, was arrested on July 23, 1987, pursuant to a warrant charging him with two counts of accessory to murder under General Statutes §§ 53a-54a (a) and 53a-8,[3] one count of accessory to capital felony under

---

[2] We also raised, sua sponte, the issue of whether the trial court's dismissal of the conspiracy charges against the defendant was an appealable final judgment. Both parties contend that it is and we agree. The defendant's motion to dismiss was granted after the trial court had found no probable cause at a hearing under General Statutes § 54-46a. The trial court had also observed that the state had been given other opportunities to disclose evidence to establish probable cause but had failed to do so and that it was apparent to the trial court that the state had no further evidence. The trial court, therefore, dismissed the charges under General Statutes § 54-56, apparently to protect the defendant from the unchecked power of the prosecuting attorney; see *State* v. *Carroll,* 13 Conn. Sup. 112, 113 (1944); and the repeated initiation and termination of charges that left him in "legal limbo." See *State* v. *Lloyd,* 185 Conn. 199, 207, 440 A.2d 867 (1981). Under such circumstances a dismissal terminates the prosecution and is an appealable final judgment. *State* v. *Ross,* 189 Conn. 42, 49, 454 A.2d 266 (1983).

[3] "[General Statutes] Sec. 53a-54a. MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

"[General Statutes] Sec. 53a-8. CRIMINAL LIABILITY FOR ACTS OF ANOTHER. A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

§§ 53a-54b (8)[4] and 53a-8, two counts of conspiracy to commit murder under §§ 53a-54a (a) and 53a-48[5] and one count of conspiracy to commit capital felony under §§ 53a-54b (8) and 53a-48. On May 26, 1988, the state filed a substitute information charging the defendant with two counts of accessory to murder, with accessory to capital felony, with conspiracy to commit murder and with conspiracy to commit capital felony. That same date the state submitted the substitute information to the trial court, *Kaplan, J.,* for a determination of probable cause in accordance with General Statutes § 54-46a.[6] After a hearing, the trial court found that

[4] "[General Statutes] Sec. 53a-54b. CAPITAL FELONY. A person is guilty of a capital felony who is convicted of any of the following . . . (8) murder of two or more persons at the same time or in the course of a single transaction."

[5] "[General Statutes] Sec. 53a-48. CONSPIRACY. RENUNCIATION. (a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy.

"(b) It shall be a defense to a charge of conspiracy that the actor, after conspiring to commit a crime, thwarted the success of the conspiracy, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose."

[6] "[General Statutes (Rev. to 1987)] Sec. 54-46a. PROBABLE CAUSE HEARING FOR PERSONS CHARGED WITH CRIMES PUNISHABLE BY DEATH OR LIFE IMPRISONMENT. (a) No person charged by the state, on or after May 26, 1983, shall be put to plea or held to trial for any crime punishable by death or life imprisonment unless the court at a preliminary hearing determines there is probable cause to believe that the offense charged has been committed and that the accused person has committed it. The accused person may knowingly and voluntarily waive such preliminary hearing to determine probable cause.

"(b) Unless waived by the accused person or extended by the court for good cause shown, such preliminary hearing shall be conducted within sixty days of the filing of the complaint or information in superior court. The court shall be confined to the rules of evidence, except that written reports of expert witnesses shall be admissible in evidence and matters involving chain of custody shall be exempt from such rules. No motion to suppress or for discovery shall be allowed in connection with such hearing. The accused person shall have the right to counsel and may attend and, either individually or by counsel, participate in such hearing, present argument

the state had failed to establish probable cause to continue the prosecution of the defendant on either the accessory counts or the conspiracy counts.

More particularly, the trial court found that the state had failed to present sufficient evidence to enable it to find probable cause to believe that the defendant knew that an alleged coconspirator, Eric Steiger, planned or intended to kill the two victims in this case, William Price and Daniel Seymour. The trial court concluded, therefore, that the state had not demonstrated probable cause of the defendant's intent to cause death, a prerequisite to the continuation of the prosecution under both the accessory to murder and the conspiracy to commit murder statutes. *State* v. *Beccia,* 199 Conn. 1, 3-4, 505 A.2d 683 (1986); *State* v. *Teart,* 170 Conn. 332, 336, 365 A.2d 1200 (1976).

After the trial court announced its decision, the state protested the trial court's ruling on the conspiracy counts arguing that, because those charges did not carry possible penalties of death or life imprisonment, they did not require a determination of probable cause under § 54-46a in order for the state to continue their prosecution. The trial court, however, opined that it

to the court, cross-examine witnesses against him and obtain a transcript of the proceedings at his own expense. At the close of the prosecution's case, if the court finds that, based on the evidence presented by the prosecution, probable cause exists, the accused person may make a specific offer of proof, including the names of witnesses who would testify or produce the evidence offered. The court shall not allow the accused person to present such evidence unless the court determines that such evidence would be sufficient to rebut the finding of probable cause.

"(c) If, from the evidence presented pursuant to subsection (b) of this section, it appears to the court that there is probable cause to believe that the accused person has committed the offense charged, the court shall so find and approve the continuance of the accused person's prosecution for that offense. A determination by the court that there is not probable cause to require the accused person to be put to trial for the offense charged shall not operate to prevent a subsequent prosecution of such accused person for the same offense."

had been asked to make a probable cause determination as to all the counts in the information, conspiracy as well as accessory, that it had done so, and that the state was bound by its finding.[7]

The state thereafter filed an information against the defendant dated June 14, 1988, charging him with two counts of accessory to murder and one count of accessory to capital felony and moved for another hearing in probable cause under § 54-46a as to those charges only. The requested hearing was held by the trial court, *Kline, J.,* on July 27, 1988. After the hearing, Judge Kline found no probable cause to continue the prosecution of the accessory charges.

On that same date, July 27, 1988, the state filed another information against the defendant, charging him only with the two conspiracy counts. In response, the defendant filed a motion to dismiss the conspiracy counts under General Statutes § 54-56,[8] claiming that,

---

[7] The record reveals no reason why the state would submit the conspiracy counts for a probable cause determination under General Statutes § 54-46a. Neither party has maintained that those charges subjected the defendant to a possible penalty of death or life imprisonment. The defendant in his brief, moreover, has treated the information as containing simply two counts of conspiracy to commit murder, a class B felony. See General Statutes § 53a-51. We will do likewise. That being the case, the conspiracy charges were not required to be submitted for a probable cause determination under the statute. See General Statutes § 54-46a (c). The accessory statute, on the other hand, treats an accessory the same as a principal offender. See General Statutes § 53a-8. An accessory to murder, therefore, is subject to the possibility of a penalty of life imprisonment. The accessory counts against the defendant were, therefore, required to be submitted to a hearing under § 54-46a for a probable cause determination.

[8] "[General Statutes] Sec. 54-56. DISMISSAL OF INFORMATION BY COURT. All courts having jurisdiction of criminal cases shall at all times have jurisdiction and control over informations and criminal cases pending therein and may, at any time, upon motion by the defendant, dismiss any information and order such defendant discharged if, in the opinion of the court, there is not sufficient evidence or cause to justify the bringing or continuing of such information or the placing of the person accused therein on trial."

because in both earlier proceedings the trial court had failed to find probable cause of an intent to cause death on the part of the defendant, the state should be foreclosed from continuing the prosecution of the conspiracy counts against him.

A hearing was held on the defendant's motion to dismiss on August 8, 1988. Subsequent to the hearing, Judge Kaplan rendered an oral decision in which he concluded that, even if unnecessary, the state had submitted the conspiracy charges to him for a determination of probable cause in the initial § 54-46a hearing and that he had correctly found that there was no probable cause to continue their prosecution. He also noted that Judge Kline had refused to find probable cause to continue the prosecution of the accessory charges at the second § 54-46a hearing because of a lack of evidence of the requisite intent to cause death on the part of the defendant. This was the same reason, he stated, that there was insufficient probable cause found at the first § 54-46a hearing to continue the prosecution of the conspiracy counts that were now the subject of the defendant's motion to dismiss. Further, he observed that the state had offered no additional evidence of intent.

Judge Kaplan then stated in his decision that the hearing on the defendant's motion to dismiss had become "[i]n effect . . . a *Franks* v. *Delaware* [438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978)] type hearing." This conclusion was apparently reached because testimony produced at the probable cause hearing before him led Judge Kaplan to believe that an averment in the arrest warrant affidavit "necessary for a finding of probable cause on the [key] issue of intent," was false and misleading and had been made with a reckless disregard of the truth. He then concluded "that the two counts of conspiracy to commit murder, contained in the July 27th, 1988 information, filed against Bryan Patterson, [had] no basis because there [was] no

intent to establish a conspiracy to commit murder and therefore, those two counts contained in that information are hereby dismissed." Judge Kaplan then went on to say that, "based upon the decision that I've made, since necessarily I've treated this as a *Franks* decision, in order for the State to be able to take an appeal I will also dismiss the charges as they relate to Bryan Patterson under the warrant." Presumably, since the dismissal of the conspiracy counts was the only issue before him, Judge Kaplan, by that statement, expressed an intention to dismiss not only the conspiracy counts in the information of July 27, 1988, but also the conspiracy counts contained in the original information accompanying the arrest warrant.[9]

It appears that Judge Kaplan's decision to dismiss the conspiracy counts against the defendant has two bases. One is that the affidavit supporting the arrest warrant on which the defendant was arrested included a recklessly made false statement on a key element of the crime of conspiracy to commit murder that required dismissal pursuant to *Franks* v. *Delaware,* supra. The second is that there was insufficient evidence of "intent to establish a conspiracy to commit murder" to justify a finding of probable cause and a continuation of the prosecution against the defendant. We disagree with the trial court as to both of these grounds.

A *Franks* violation in an affidavit supporting an arrest warrant does not entitle a defendant to the dismissal of the charges for which he was arrested. Such a violation may require the suppression of evidence or

---

[9] The only explanation we can fathom for this ruling is that, having cited the *Franks* v. *Delaware,* 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978) decision as a ground for dismissal, the court attempted to void ab initio the prosecution of the conspiracy charges against the defendant because of their connection with the allegedly defective warrant affidavit. This case had several, and we trust, unique procedural aspects.

statements obtained as a result of the execution of the warrant but it does not deprive the court of jurisdiction nor does it bar a subsequent prosecution or void a resulting conviction. *United States* v. *Crews,* 445 U.S. 463, 474, 100 S. Ct. 1244, 63 L. Ed. 2d 537 (1980); *Gerstein* v. *Pugh,* 420 U.S. 103, 119, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975); *United States* v. *Blue,* 384 U.S. 251, 255, 86 S. Ct. 1416, 16 L. Ed. 2d 510 (1966); *Frisbie* v. *Collins,* 342 U.S. 519, 522, 72 S. Ct. 509, 96 L. Ed. 541, reh. denied, 343 U.S. 937, 72 S. Ct. 768, 96 L. Ed. 1344 (1952); *Ker* v. *Illinois,* 119 U.S. 436, 440, 7 S. Ct. 225, 30 L. Ed. 421 (1886); *United States* v. *Studley,* 783 F.2d 934, 937 (9th Cir. 1986); *United States* v. *Darby,* 744 F.2d 1508, 1530–31, reh. denied, 749 F.2d 733 (11th Cir. 1984), cert. denied sub nom. *Yamanis* v. *United States,* 471 U.S. 1100, 105 S. Ct. 2322, 85 L. Ed. 2d 841 (1985); *United States* v. *Stuart,* 689 F.2d 759, 762 (8th Cir. 1982), cert. denied, 460 U.S. 1037, 103 S. Ct. 1427, 75 L. Ed. 2d 788 (1983); *State* v. *Mitchell,* 200 Conn. 323, 332, 512 A.2d 140 (1986); *State* v. *Flemming,* 198 Conn. 255, 259, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986); *Lackey* v. *State,* 246 Ga. 331, 333–34, 271 S.E.2d 478 (1980); *Felders* v. *State,* 516 N.E.2d 1, 2 (Ind. 1987); *Nickell* v. *State,* 746 P.2d 1155, 1157 (Okla. Crim. App. 1987); *Pasco* v. *Titus,* 26 Wash. App. 412, 416, 613 P.2d 181, rev. denied, 94 Wash. 2d 1005 (1980). Therefore, insofar as the alleged *Franks* violation was relied upon by the trial court for its determination to dismiss the conspiracy counts against the defendant, the decision is in error.[10]

---

[10] A *Franks* violation also requires that the allegedly false material statement in an affidavit be made recklessly by the affiant. *Franks* v. *Delaware,* 438 U.S. 154, 171, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). In this instance there was no finding that it was the affiants who were reckless in alleging the facts relied upon for probable cause in the affidavit. In fact, neither of the affiants who signed the arrest warrant affidavit testified at the hearings before either Judge Kaplan or Judge Kline.

We also do not agree that there was insufficient cause or evidence to justify the continuation of the prosecution of the conspiracy counts against the defendant. On appeal, we will examine the evidence to determine whether it is sufficient to establish probable cause. *State* v. *Mitchell,* supra, 335. When reviewing "a motion to dismiss an information, the proffered proof is to be viewed most favorably to the state." *State* v. *Morrill,* 193 Conn. 602, 611, 478 A.2d 994 (1984).

The record reveals that when the trial court granted the defendant's motion to dismiss, it had, as a result of the initial § 54-46a hearing, the following evidence before it. On the night of Saturday, July 11, 1987, the defendant and Richard Bazzano drove to a gathering of young people talking and drinking beer at a cul-de-sac in a new housing development on King Fisher Lane in Suffield. While there, they encountered the defendant's brother, Andrew Patterson, and Eric Steiger. Shortly after arriving, the defendant left momentarily to give a friend a ride.

While the defendant was gone, a pickup truck arrived at the gathering and two men carrying pipes alighted and told the youths to leave the area. When everyone started to leave, Steiger approached the two men and explained that he had no weapon and that he did not want trouble, but that he wanted to know why they were hassling the group. The men responded by telling Steiger that they could take his head off with one swing. During the exchange, one of the men poked Steiger in the face with a pipe. At that, Steiger became very agitated and said, "if you think you're big with a pipe, I'll get a gun and come back." Steiger mumbled that he was coming back to kill his assailants as he, Andrew Patterson, and Bazzano prepared to leave the area in his car.

When the defendant returned to King Fisher Lane, everyone was in the process of leaving, so he pulled his car up next to Steiger's to inquire as to what was going on. Steiger, Bazzano and Andrew Patterson, who were seated in Steiger's car, told the defendant not to go any further because of the presence of the men they had encountered. It was at this point that the defendant learned of the confrontation between Steiger and the two men, and that Steiger had been struck with a pipe. The defendant then turned his car around and followed Steiger's car back to Steiger's house.

When the four youths arrived there, Steiger was very upset. He told the defendant that they (Bazzano, Steiger and Andrew) were going to go back to King Fisher Lane to the residence of the two men. Steiger then went upstairs into the garage attic of his home with Andrew Patterson, Bazzano and the defendant. From the top of the attic stairs, the defendant observed Steiger commence to dress in camouflage military garb and Bazzano and Andrew Patterson begin to load ammunition into various weapons, including an M-1 carbine and a nine millimeter pistol.

Steiger told the defendant to go downstairs and distract his mother because he did not want to kill her. Steiger told the defendant that if anyone got in his way, including his mother, Bazzano or Andrew Patterson, he would kill them. After talking to Steiger's mother, the defendant returned to the attic for a short period of time and observed the others still loading ammunition into magazines. The loading of magazines went on for approximately half an hour while the defendant again went downstairs to distract Steiger's mother. While Steiger, Andrew Patterson and Bazzano were in the attic, they loaded approximately 1000 rounds of ammunition into various weapons and magazines.

After Steiger, Andrew Patterson and Bazzano had completed their preparations in the attic, the defendant met them outside Steiger's house. At that time Steiger was fully clothed in military gear including camouflage military pants, military boots, a camouflage t-shirt, a military field jacket and an ammunition belt. The web ammunition belt that was looped over Steiger's shoulder contained a number of loaded ammunition pouches and Steiger had on his person a loaded M-1 carbine, a nine millimeter pistol and a ten inch Gerber knife that was strapped to his chest.

After meeting the others outside, the defendant left temporarily at Steiger's request to secure a police scanner. When he returned, he and Bazzano lifted Steiger into the back of Steiger's hatchback automobile. Following Steiger's instructions, the defendant lowered the hatch but did not lock it. Then the defendant, driving his own vehicle, followed Steiger's automobile back to King Fisher Lane. At that point, Andrew Patterson was driving Steiger's vehicle, Bazzano was in the passenger seat and Steiger was in the rear hatchback area.

At King Fisher Lane, the defendant stationed his car next to Steiger's. At that time Steiger told the defendant to pull into the driveway of the victims' house to see whether his assailants' pickup truck was parked there. When the defendant did as he was told, two men came out of the house, ran towards the defendant's car and struck it with metal pipes. The defendant then backed out of the driveway and drove away leaving behind the other car with Steiger, Bazzano and his brother. As the defendant drove away, he observed Steiger jump out of the hatchback of his car and run toward the two men in the driveway. He heard one gunshot.

After Steiger leapt from the car, Bazzano and Andrew Patterson also drove away and the defendant met and followed them in his car to the Patterson house. Andrew Patterson and Bazzano then drove to Vermont while the defendant stayed in the Suffield area. When the defendant returned home in the early hours of the following morning, Steiger came from behind the garage and told the defendant that he had killed the two men by firing approximately twenty rounds at them. At that time, Steiger handed the defendant his web ammunition belt and told him to throw it into the Connecticut River. The defendant, however, threw the belt into a field behind his house and went to bed. He later retrieved the belt for the police.

"The quantum of evidence necessary to establish probable cause at a preliminary hearing is less than the quantum necessary to establish proof beyond a reasonable doubt at trial . . . . *State* v. *Green,* 237 Kan. 146, 148, 697 P.2d 1305 (1985); *Myers* v. *Commonwealth,* 363 Mass. 843, 850, 298 N.E.2d 819 (1973); *State* v. *Dunn,* 121 Wis. 2d 389, 396, 359 N.W.2d 151 (1984). In making its finding, the court had to 'determine whether the government's evidence would warrant a person of reasonable caution to believe that the accused [had] committed the crime.' Arenella, 'Reforming the Federal Grand Jury and the State Preliminary Hearing to Prevent Conviction Without Adjudication,' 78 Mich. L. Rev. 463, 478 (1980); *Brinegar* v. *United States,* 338 U.S. 160, 175–76, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949)." *State* v. *Mitchell,* supra, 336. " 'The quantum of evidence necessary to establish probable cause exceeds mere suspicion, but is substantially less than that required for conviction. Our cases have made clear that "[t]here is often a fine line between mere suspicion and probable cause, and '[t]hat line necessarily must be drawn by an act of judgment formed in light

of the particular situation and with account taken of all the circumstances.' *Brinegar* v. *United States,* supra, 176.'' *State* v. *Penland,* 174 Conn. 153, 155–56, 384 A.2d 356, cert. denied, 436 U.S. 906, 98 S. Ct. 2237, 56 L. Ed. 2d 404 (1978).' '' *State* v. *Dennis,* 189 Conn. 429, 431–32, 456 A.2d 333 (1983); *State* v. *Acquin,* 187 Conn. 647, 657, 448 A.2d 163 (1982), cert. denied, 463 U.S. 1229, 103 S. Ct. 3570, 77 L. Ed. 2d 1411 (1983).

The conspiracy statute requires the defendant to act with the same intent as that of the perpetrator of the underlying crime. General Statutes § 53a-48; *State* v. *Beccia,* supra, 3–4. In this case, therefore, the defendant must have acted with the specific intent to cause the death of the victims. General Statutes § 53a-54a; *State* v. *Chace,* 199 Conn. 102, 104, 505 A.2d 712 (1986). "Generally, intent can be proved only by circumstantial evidence. *State* v. *Harrison,* 178 Conn. 689, 695, 425 A.2d 111 (1979); *State* v. *Bzdyra,* 165 Conn. 400, 403, 334 A.2d 917 (1973). ' "Intent may be, and usually is, inferred from conduct. *State* v. *Cofone,* 164 Conn. 162, 164, 319 A.2d 381 [1972]; *State* v. *Smith,* 157 Conn. 351, 354, 254 A.2d 447 [1969]. Intention is a mental process, and of necessity it must be proved by the statements or actions of the person whose act is being scrutinized. *State* v. *Cofone,* supra, 164; *State* v. *Mazzadra,* 141 Conn. 731, 735, 109 A.2d 873 [1954]. A person's intention is to be inferred from his conduct. *Kiernan* v. *Borst,* 144 Conn. 1, 6, 126 A.2d 569 [1956]." *State* v. *Bzdyra,* [supra].' *State* v. *Sober,* 166 Conn. 81, 92–93, 347 A.2d 61 (1974)." *State* v. *Morrill,* supra, 609. " ' "An intent to cause death may be inferred from circumstantial evidence such as the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading to and immediately following the death." *State* v. *Zdanis,* 182 Conn. 388, 396, 438 A.2d 696 (1980), cert. denied, 450 U.S. 1003, 101 S. Ct. 1715, 68 L. Ed. 2d 207 (1981). . . . The use of

inferences based on circumstantial evidence is necessary because direct evidence of the accused's state of mind is rarely available. *State* v. *Rodriguez,* 180 Conn. 382, 404, 429 A.2d 919 (1980).' *State* v. *Martin,* 195 Conn. 166, 170, 487 A.2d 177 (1985)." *State* v. *Chace,* supra, 105.

"Further, ' "[c]onspiracy can seldom be proved by direct evidence. It may be inferred from the activities of the accused persons. *State* v. *Faillace,* 134 Conn. 181, 185, 56 A.2d 167 (1947). It is only in rare instances that conspiracy may be established by proof of an express agreement to unite to accomplish an unlawful purpose. The combination . . . may be proved by circumstantial evidence, that is, by proof of the separate acts of the individuals accused and by proof of circumstances from which the illegal confederation may be inferred. *State* v. *Gerich,* 138 Conn. 292, 297, 83 A.2d 488 [1951]." *State* v. *Holmes,* 160 Conn. 140, 150, 274 A.2d 153 (1970).' *State* v. *Baker,* 195 Conn. 598, 604, 489 A.2d 1041 (1985)." *State* v. *Brown,* 199 Conn. 14, 22, 505 A.2d 690 (1986).

After a review of the record, we conclude that the evidence presented at the preliminary hearing was sufficient to establish probable cause to find a conspiracy to commit murder in this case. We note, first, that the state need not show, as the trial court seemed to believe, that the defendant was present when Eric Steiger said that he intended to kill the two men, for the court to draw a reasonable inference that the defendant knew what was happening and agreed to its accomplishment. The probable cause determination requires a common sense view of the facts. When the defendant returned to King Fisher Lane, he learned of the confrontation between Steiger and the two men. He knew that Steiger had been hit in the face with a pipe and that he wanted to get even. The defendant thereupon returned to Steiger's house with Steiger,

Andrew Patterson and Bazzano. While at Steiger's house, the defendant watched as the others loaded ammunition into an M-1 carbine, a nine millimeter pistol and an ammunition belt. The defendant was also made aware that Steiger would kill anyone who got in his way, including his own mother.

Further, when the defendant met Steiger outside Steiger's house, Steiger was dressed in a full military camouflage outfit, carried a loaded M-1 carbine, a loaded nine millimeter pistol, a large knife and voluminous amounts of ammunition. After observing this spectacle, the defendant did not hesitate to provide Steiger with a police scanner to enable Steiger to avoid police detection during his expedition. He also assisted Steiger into the back of the hatchback car and, at Steiger's direction, left the hatchback unlocked to allow Steiger to exit quickly with his weapons. He then followed Steiger's car back to King Fisher Lane and pulled his automobile into the driveway in order to locate the truck that the two men, who he knew were the targets of Steiger's wrath, had previously driven to the end of the cul-de-sac earlier in the evening.

The recited facts would warrant a person of reasonable caution to believe that the defendant knew that Steiger intended to kill the two men and that the defendant, by assisting him, possessed the requisite intent to make him a coconspirator. We, therefore, conclude that the trial court abused its discretion and erred when it determined that there was not sufficient evidence or cause to justify the continuation of the prosecution of the conspiracy charges against the defendant. *State* v. *Mitchell,* 204 Conn. 187, 205–206, 527 A.2d 1168, cert. denied, 484 U.S. 927, 108 S. Ct. 293, 98 L. Ed. 2d 252 (1987); see *State* v. *Corchado,* 200 Conn. 453, 464, 512 A.2d 183 (1986). The trial court's action in dismissing those charges is therefore reversed and

the charges against the defendant should be allowed to proceed to trial without the necessity of a further hearing under § 54-46a.

There is error, the judgment is set aside and the case is remanded to the trial court with direction to reinstate the information containing the conspiracy counts against the defendant.

In this opinion the other justices concurred.