37 A.3d 713 (2012)
304 Conn. 161
STATE of Connecticut
v.
Willie James COLEMAN.
No. 18519.
Supreme Court of Connecticut.
Argued January 4, 2012.
Decided March 20, 2012.
*715 Jon L. Schoenhorn, Hartford, for the appellant (defendant).
Laurie N. Feldman, special deputy assistant state's attorney, with whom, on the brief, were Gail P. Hardy, state's attorney, and Anthony Bochicchio, senior assistant state's attorney, for the appellee (state).
*716 ROGERS, C.J., and NORCOTT, PALMER, ZARELLA, McLACHLAN, EVELEIGH and HARPER, Js.
HARPER, J.
The defendant, Willie James Coleman, was convicted, following a jury trial, of murder in violation of General Statutes § 53a-54a in connection with the fatal stabbing of his girlfriend, Twonna White. The trial court imposed a sentence of forty-five years imprisonment, and thereafter the defendant appealed directly to this court pursuant to General Statutes § 51-199(b)(3). On appeal, the defendant contends that the state offered insufficient evidence to prove beyond a reasonable doubt his intent to kill White, that the trial court improperly instructed the jury that it could infer such intent from the number of wounds he had inflicted on her and that an improper statement by the prosecutor in closing argument deprived him of a fair trial. We affirm the judgment.
The jury reasonably could have found the following facts. On July 8, 2008, at approximately 5:30 p.m., the defendant placed a 911 call from his apartment reporting that he had "just stabbed [his] girlfriend" and requesting an ambulance. At the time the defendant placed the call, White still was conscious. In response to questions from the 911 operator as to White's condition, the defendant stated that he had "[s]tabbed her in the back and in the front a couple of times" and that, with respect to the means by which he had inflicted these wounds, "it was a fork and... then I used a knife too." The operator inquired as to what had caused the incident, and the defendant explained: "Well, she want to keep on talking about all the people that she got coming in my house, and I'm tired of it, had enough of it, all the people that she fucking around with, and I'm tired of it." Following a comment by the operator indicating that police officers were on their way, the defendant stated: "I'm not going nowhere. You know, I did it, you know. I ain't scared of nothing.... I'm just tired, that's all it is. I got tired.... I just got home from the court... pay the fine and all that.[1] I'm sick of it. Enough is enough. Enough is enough."
When Officers Aaron Boisvert and Robert Quaglini of the Hartford police department arrived on the scene, the defendant again acknowledged to Boisvert that he had stabbed White. Boisvert handcuffed the defendant, placed him on a bed and then went into the kitchen to aid White. A two-pronged grill fork and a black handled steak knife were lying near White's body in plain view. While Boisvert attempted to ascertain the location of White's wounds, he heard the defendant say that he was tired of White bringing other men to the apartment and then telling the defendant about those sexual encounters.
The defendant reiterated the impetus for the attack in voluntary statements to Quaglini while being escorted to the police cruiser and to Detective Seth Condon at the police station. The defendant told Quaglini that he and White had been drinking and that "[s]he got to my head. She started telling me about all the guys she was fucking and I stabbed her with a fork and a knife...." The defendant later told Condon that, after the drinking and White's boasts of infidelity, he had "snapped" and stabbed her, but had not meant to hurt or kill her.
While these events transpired, White received medical aid, including chest and abdominal surgery, but she did not survive. The medical examiner's autopsy revealed *717 that White had sustained the following external injuries: cuts on the back of two fingers on her left hand that appeared to be "defense wounds ... where somebody might be trying to fend off a weapon"; superficial cuts on the back of her left hand and on the middle of her back; a pair of puncture wounds, consistent with a barbeque type fork, in the superficial layer of the skin in her back; a pair of scrapes on her left back; a deeper scrape to her left upper back; and a cut on her scalp. None of these wounds contributed to her death. The cause of death was a single stab wound in White's chest, from the front left of her breastbone into her heart. The examiner was unable to determine the sequence of the wounds.
At trial, the court agreed to the defendant's request for the jury to be instructed on lesser included offenses to murder, acknowledging that there was evidence supporting the defendant's contention that he did not intend to kill White, and his request for an instruction on the affirmative defense to murder of extreme emotional disturbance. Thereafter, the court instructed the jury on murder, manslaughter in the first degree, manslaughter in the second degree and criminally negligent homicide. The jury returned a verdict of guilty on the murder charge and the trial court rendered judgment in accordance with the verdict. This direct appeal followed.

I
The defendant's first claim challenges the sufficiency of the evidence to establish beyond a reasonable doubt that he had the specific intent to kill White. The defendant claims that the totality of the evidence proves only that he committed manslaughter in the first degree. Specifically, the defendant points to his 911 call seeking help for White, White's still conscious condition when police arrived, the mostly empty bottles of rum and malt liquor in the kitchen that supported his assertion that he and White had been drinking, his statements to the police officers indicating that he had not meant to hurt White and that he had "snapped" after hearing White boast about her sexual relations with other men and, most importantly, the fact that all but one of the wounds he had inflicted on White were superficial. We conclude that the evidence is sufficient to support the jury's verdict.
In light of the evidence cited by the defendant, undoubtedly a jury properly could have concluded that the state had failed to prove beyond a reasonable doubt that the defendant had intended to kill White. To reach such a conclusion, the jury would have had to credit evidence and draw inferences that favored the defendant's version of events. Under our well established standard for review of the sufficiency of the evidence, however, we take the opposite view of the evidence, applying a two part test. "First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt....
"[P]roof beyond a reasonable doubt does not mean proof beyond all possible doubt ... nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [jury], would have resulted in an acquittal.... On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [jury's] verdict of guilty." (Internal quotation marks *718 omitted.) State v. Papandrea, 302 Conn. 340, 348-49, 26 A.3d 75 (2011).
"In order to be convicted under our murder statute, the defendant must possess the specific intent to cause the death of the victim.... To act intentionally, the defendant must have had the conscious objective to cause the death of the victim." (Internal quotation marks omitted.) State v. Booth, 250 Conn. 611, 655, 737 A.2d 404 (1999), cert. denied sub nom. Brown v. Connecticut, 529 U.S. 1060, 120 S.Ct. 1568, 146 L.Ed.2d 471 (2000). "Intent is a mental process which ordinarily can be proven only by circumstantial evidence. An intent to cause death may be inferred from circumstantial evidence such as the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading to and immediately following the death. State v. Zdanis, 182 Conn. 388, 396, 438 A.2d 696 (1980), cert. denied, 450 U.S. 1003, 101 S.Ct. 1715, 68 L.Ed.2d 207 (1981); see State v. Stankowski, 184 Conn. 121, 127, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S.Ct. 596, 70 L.Ed.2d 588 (1981); State v. Holley, 174 Conn. 22, 26, 381 A.2d 539 (1977); State v. Bzdyra, 165 Conn. 400, 404-405, 334 A.2d 917 (1973); State v. Litman, 106 Conn. 345, 352-53, 138 A. 132 (1927). The use of inferences based on circumstantial evidence is necessary because direct evidence of the accused's state of mind is rarely available." (Internal quotation marks omitted.) State v. Chace, 199 Conn. 102, 105, 505 A.2d 712 (1986).
In the present case, the evidence was sufficient to demonstrate that intent. The jury could have taken literally the defendant's comment to the 911 operator that he had used the grill fork and "then" had used the knife, and in turn inferred an escalation in the choice of weapons for the attack and an intention to inflict more serious injury. The fact that the defendant stabbed White in her chest with a knife and did so deeply enough to penetrate her heart also would support an inference that he intended to kill her. Cf. State v. Edwards, 247 Conn. 318, 322-23, 721 A.2d 519 (1998) ("[w]e have stated that [o]ne who uses a deadly weapon upon a vital part of another will be deemed to have intended the probable result of that act, and from such a circumstance a proper inference may be drawn in some cases that there was an intent to kill" [internal quotation marks omitted]). Although a steak knife is not a deadly weapon per se; see State v. Ray, 228 Conn. 147, 157 n. 8, 635 A.2d 777 (1993); see also General Statutes § 53a-3 (6) and (7) (respectively defining "`[d]eadly weapon'" and "`[d]angerous instrument'"); it is self-evident that such an instrument readily can cause death if used to inflict a wound in a vital organ. The jury also could have construed the defendant's statements as demonstrating a motive to kill Whitehe wanted to put an end to her infidelity and boasts thereof.
The jury also properly could have discredited or deemed irrelevant certain evidence on which the defendant relies. With regard to the defendant's subsequent efforts to obtain aid for White, the question before the jury was whether the defendant had the specific intent to kill at the time he inflicted the fatal wound. State v. Hines, 187 Conn. 199, 204, 445 A.2d 314 (1982); State v. Burgos, 37 Conn.App. 404, 410-14, 656 A.2d 238, cert. denied, 233 Conn. 915, 659 A.2d 186 (1995). Acts demonstrating remorse for an earlier act undertaken with the requisite intent may be relevant for sentencing purposes but not for determinations of guilt. Similarly, the jury was free to disregard the defendant's self-serving statement that he had not intended to kill her. State v. Delgado, 247 Conn. 616, 623-24, 725 A.2d 306 (1999) ("the [jury is] not bound to accept as true the defendant's claim of lack of intent or *719 his explanation of why he lacked intent" [internal quotation marks omitted]). Finally, even if the jury had credited the defendant's statement that he had been drinking, the defendant proffered no evidence regarding intoxication that would have supported a finding by the jury that the defendant lacked the capacity to form specific intent to kill; indeed, no such instruction was provided. See State v. Chace, supra, 199 Conn. at 106, 505 A.2d 712 ("because there was very little evidence concerning the defendant's degree of intoxication, we cannot say that it was unreasonable for the jury to have concluded that the defendant was capable of forming the specific intent to kill").
We underscore that "[w]e do not sit as a thirteenth juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record.... Rather, we must defer to the jury's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude.... This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict.... Moreover, [i]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence. The rule is that the jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Citation omitted; internal quotation marks omitted.) State v. Booth, supra, 250 Conn. at 655, 737 A.2d 404. In light of the evidence presented, we cannot conclude that the inferences necessarily drawn by the jury lacked reason and logic. Accordingly, the defendant's sufficiency of the evidence claim fails.

II
The defendant also contends that the trial court improperly instructed the jury that it could infer his intent to kill White from the number of wounds inflicted. Specifically, he contends that, although that fact can provide circumstantial evidence of intent to kill in some cases, the superficial nature of all but one of the wounds in the present case made such an instruction misleading and prejudicial. The defendant contends that he preserved this claim by challenging the instruction but alternatively seeks to prevail under State v. Golding, 213 Conn. 233, 239-40, 567 A.2d 823 (1989),[2] or the plain error doctrine. The defendant disputes the state's assertion that, by his conduct, he had induced the claimed error or waived his right to assert this claim. We conclude that the defendant cannot prevail on this claim.
The record reveals the following additional facts. The evening before the jury was to receive instructions, the trial court clerk faxed a "rough draft" to the defendant's trial attorney and the assistant state's attorney. The following morning, the court met with both counsel to discuss the charge, at which time the court gave *720 them a completed draft to share for final review.[3] Later that day, the trial court met with counsel and solicited comments, requests or objections to the instructions. The following exchange ensued:
"[Defense Counsel]: Your Honor, I have only one point. On page fifteen when you're discussing the first element of murder, intent to cause death ... you correctly point out that intent to cause death may be inferred from circumstantial evidence. And then you state, quote, `the type and number of wounds inflicted, as well as the instrument used, may be considered as evidence of the perpetrator's intent.'
"And with all due respect Your Honor, I feel that that is editorializing. I think that that's more than fair for the prosecutor to argue. It's certainly appropriate that the jury can consider that, but I think that for Your Honor to single that out without, on the other hand, mentioning the very sound of his voice when hethe defendant's voice when he speaks on the 911 [tape], his behavior when he's staying by the body, assisting the police, tried to bring assistance to [White], all of which is circumstantial evidence of a lack of intent, and you don't say that.
"So I think it's unbalanced, and I think it does constitute improper editorializing, and I would ask Your Honor either to omit that clause or to balance it by talking about all of the things that show a lack of such intent.
"The Court: That's easy enough to do. I'll just go off the script and mention that all of the circumstances, including the tape and whatever other evidence they heard."
In response to comments from the assistant state's attorney that the charge as written was proper, the trial court indicated that it thought that the instruction was not only proper because it is "boilerplate... used in hundreds of murder cases," but also balanced, because the relatively small number of wounds could be argued as evidence for or against the intent to kill. The following exchange then ensued:
"The Court: I guess it depends on your perspective. And I'm sure you'll both argue your contentions with regard to what the woundsthe number of wounds, the type of wounds, the instrument used, and there's plenty to argue on both sides there.
"So ... I'll say that they should also consider all of the other circumstances including the tape, and the observations of the police officers with regard to the behavior of the ... defendant, and there's other language in the body of the ... charge that talks about circumstantial evidence and what it is. It's everything that they know and have heard.
"That's a good point and I'm listening to it and I'll do the best I can to make my remarks balanced. Anything else?
"[Defense Counsel]: No, Your Honor."
Thereafter, the trial court provided the following instruction to the jury on specific intent: "The intent to cause death may be inferred from circumstantial evidence.... The type and number of wounds inflicted, as well as the instrument used, and any other circumstances occurring at the time of the event, orbefore or after the event, these are all circumstances that may be considered as evidence of the perpetrator's *721 intent and ... included in that are the statements of the defendant recorded on the 911 tape. So, I'm not just trying to focus you on one aspect of the case when I say wounds, all the circumstances around that time may be considered by you as evidence of the perpetrator's intent. And from such evidence, an inference may be drawn that there was or wasn't an intent to cause death.
"Any inference that may be drawn from the nature of the instrumentality used and the manner of its use is an inference of fact to be drawn by you upon consideration of these and other circumstances in the case in accordance with my previous instructions. Declarations and conduct of the accused after the infliction of the wounds may be considered if you find that they tend to show the defendant's intent, and ... both attorneys argued that point. They explained their contentions and they were obviously different based on the same evidence, the declarations of the defendant. This inference is not a necessary one; that is, you are not required to infer intent from the defendant's alleged conduct, but it is an inference you may draw if you find it is reasonable and logical and in accordance with my instructions on circumstantial evidence."
Thereafter, the trial court completed instructions on the murder charge, provided instructions on the affirmative defense of extreme emotional disturbance and provided instructions on the various lesser included offenses. The court then excused the jury, at which time the court immediately inquired whether either counsel had "[a]ny exceptions, or suggested corrections, or anything [else] you'd like me to say to the jury." Defense counsel replied, "None whatsoever, Your Honor."
Several observations readily can be drawn from this record. First, the objection that the defendant raised before the trial court is different than the objection that he raises on appeal. At trial, the defendant contended that instructing the jury that they could infer intent to kill from the number of wounds, as well as the instrument used, was improper because it was "editorializing" and "unbalanced...." In essence, the defendant contended that the instruction both suggested that an inference adverse to him could be drawn from that evidence and failed to direct the jury to consider other evidence from which inferences favorable to him could be drawn. Although the trial court viewed the instruction as one that would permit an inference either of intent or lack thereof, it agreed with the defendant that it would be appropriate to direct the jury to consider the surrounding circumstances that the defendant had claimed demonstrated his lack of intent to kill. On appeal, however, the defendant contends that the instruction regarding the number of wounds was legally improper because all but one wound was superficial and therefore the evidence could not support such an instruction. Because the defendant must plainly put the trial court on notice as to the specific basis for his objection; see Practice Book § 60-5; State v. Jose G., 290 Conn. 331, 342-43, 963 A.2d 42 (2009); he did not preserve the objection that he now raises on appeal.
Even if the defendant's objection at trial could be viewed as consistent with his claim on appeal, he abandoned that objection by suggesting a cure that the trial court adopted.[4] As we recently observed, in addition to express waiver, implicit waiver of a claim of instructional error may properly be found where "the *722 defense expressly acknowledged and agreed by words or conduct to the instruction challenged on appeal." State v. Kitchens, 299 Conn. 447, 475, 10 A.3d 942 (2011). The defendant not only expressed satisfaction when the court indicated what it proposed to do to address the defendant's objection, he also stated, after the jury had received its instructions, that he took no exception to those instructions. Accordingly, the defendant has failed to satisfy the third prong necessary to prevail under Golding. See State v. Holness, 289 Conn. 535, 543, 958 A.2d 754 (2008) (concluding that claim failed third prong of Golding where "defense counsel clearly and unequivocally agreed to the limiting instruction that the trial court gave to the jury").
The defendant suggests, with respect to the issues of both preservation and waiver, that he is entitled to relief because he asked the trial court to omit the language that he challenges on appeal and should not be required to take an exception after the court declined to provide the relief requested. Related to this suggestion, the defendant contends that his request that the trial court omit the language "or" add further instructions highlighting additional circumstances should not be construed as proposing equally satisfactory alternative forms of relief such that he should be deemed to have obtained the relief sought. We disagree. Nothing in the defendant's objection itself indicated that adding further instructions was a secondary alternative to be considered only if the trial court denied his preferred relief of excising the phrase at issue. Moreover, given the nature of the defendant's objection, there is nothing inherent in the request for these two forms of relief that plainly manifests a preferential hierarchy of the sort that can plainly be seen, for example, in alternative requests for a mistrial or for a curative instruction. Indeed, when the defendant asked for a mistrial in response to his claim of improper argument by the assistant state's attorney; see part III of this opinion; he stated: "I think that the appropriate remedy is mistrial, in the alternative, perhaps, a curative instruction could be formulated."
Finally, we reject the defendant's request for relief under the plain error doctrine. Even if we were to assume, without deciding, that the defendant's waiver would not preclude him from seeking such relief; see State v. Darryl W., 303 Conn. 353, 371-72 n. 17, 33 A.3d 239 (2012) (recognizing that "there appears to be some tension in our appellate case law as to whether reversal on the basis of plain error could be available in cases where the alleged error is causally connected to the defendant's own behavior"); we conclude that "[i]t is manifest from the defendant's own exposition of his claim that he cannot demonstrate ... [his entitlement to] the extraordinary remedy of reversal." (Internal quotation marks omitted.) Id., at 373, 33 A.3d 239. To be entitled to reversal under the plain error doctrine, "we must determine whether the trial court in fact committed an error and, if it did, whether that error was indeed plain in the sense that it is patent [or] readily discernable on the face of a factually adequate record, [and] also ... obvious in the sense of not debatable.... [I]t is not enough for the defendant simply to demonstrate that his position is correct. Rather ... the claimed impropriety [must be] so clear, obvious and indisputable as to warrant the extraordinary remedy of reversal." (Internal quotation marks omitted.) Id. The defendant acknowledges that the instruction at issue is provided on the judicial branch's website[5] and that *723 there is case law deeming such evidence relevant in determining the sufficiency of evidence of intent to kill. The defendant further acknowledges that, in the present case, the prosecutor properly could have pointed to the number of wounds and that the jury properly could have relied on such evidence to determine his intent. The defendant has provided the court with no authority to distinguish between the propriety of the jury's consideration of such evidence for that purpose and the propriety of an instruction permitting the jury to do so. Therefore, the defendant's exposition of his claim demonstrates on its face that he is not entitled to relief under the plain error doctrine.

III
Finally, we briefly consider the defendant's claim of prosecutorial impropriety. The defendant points to a comment the assistant state's attorney made in response to defense counsel's closing argument, in which defense counsel had urged the jury to consider the lesser included offenses, that each of those offenses carry a "substantial penalty," and that, of those offenses, the evidence proved only the defendant's guilt of criminally negligent homicide, which is a "serious crime...." Specifically, the defendant points to the following statement in the assistant state's attorney's rebuttal argument: "[A]s far as the different crimes, don't let anybody tell you what's serious and what's not; that's not for you to consider. You're to consider what crime fits the facts; penalties are not a consideration. While we make that attempt to go that way, I would argue, because they don't want you to pay attention to the facts and to the evidence because they know that points to murder." (Emphasis added.) The defendant contends that the emphasized statement constitutes an improper statement of the prosecutor's personal opinion on what the defendant, or his counsel, believes or knows about the defendant's guilt.
The state argues that the statement was not improper because it was responding, albeit inartfully, to the defendant's improper attempts to divert the jury's attention from what crime was proved by the evidence and to assuage any potential concern that the defendant would not be subject to serious penalties if convicted of the least serious of the lesser offenses because they would not be, as defense counsel stated, "letting someone off the hook or ... [get] away with something...." The state further contends that the prosecutor should be given some leeway because rebuttal argument is largely unscripted and responsive to argument given moments before. We conclude that, even if the comment by the assistant state's attorney exceeded the bounds of proper argument, the defendant has not met his burden of proving that "considered in light of the whole trial, the improprieties were so egregious that they amounted to a denial of due process." State v. Payne, 303 Conn. 538, 562-63, 34 A.3d 370 (2012).
In considering such claims, we examine the factors articulated in State v. Williams, 204 Conn. 523, 540, 529 A.2d 653 (1987), "with due consideration of whether that misconduct was objected to at trial." (Internal quotation marks omitted.) State v. Warholic, 278 Conn. 354, 362, 897 A.2d 569 (2006). These factors include: "the extent to which the [impropriety] was invited by defense conduct or argument ... the severity of the [impropriety] ... the frequency of the [impropriety] ... the centrality of the [impropriety] to the critical *724 issues in the case ... the strength of the curative measures adopted ... and the strength of the state's case." (Internal quotation marks omitted.) State v. Payne, supra, 303 Conn. at 562, 34 A.3d 370.
In the present case, defense counsel did, to some extent, invite this comment by improperly suggesting to the jury that the penalty attached to the offenses was relevant to their considerations, not simply the evidence. The trial court did state to defense counsel, however, in the jury's presence in response to the state's objection, that "[p]enalties and the relative penalties amongst murder are not really relevant." The assistant state's attorney did not state that the defendant or his counsel knew that the defendant was guilty of murder but, rather, that they knew that the evidence points to murder. The comment was an isolated statement in the state's rebuttal. The trial court provided a curative instruction following the defendant's objection, explaining that counsel sometimes forget the rule requiring them to focus on the evidence and not to express a personal opinion, pointing specifically to the comment to which the defendant objected and directing the jury to ignore that comment. Although the state's case was far from overwhelming as to the requisite intent to kill, we are not persuaded that the defendant has demonstrated that, under the totality of the factors, an isolated comment of this nature deprived him of a fair trial.
The judgment is affirmed.
In this opinion the other justices concurred.
NOTES
[1] It appears from the record that the defendant had paid a fine in connection with an offense committed by White for which she had been arrested.
[2] Pursuant to State v. Golding, supra, 213 Conn. at 239-40, 567 A.2d 823, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.)
[3] The record before this court does not contain either the rough draft or the original completed draft. Nonetheless, because defense counsel quoted the particular language at issue, we assume that this language was included in both drafts and that the defendant had a meaningful opportunity to review the charge. We note that there is no claim to the contrary, but underscore that the state, as the party asserting waiver, has the burden of demonstrating that the defendant was provided a meaningful opportunity to review the jury instruction.
[4] We do not agree with the state that the defendant induced the error by making such a suggestion. He did not request the language that he challenges on appeal regarding the number of wounds as evidence of intent; rather, he requested additional instructions to balance the instruction crafted by the court.
[5] Contrary to the defendant's suggestion, the fact that the judicial branch website contains a disclaimer that the instructions are not necessarily legally sufficient in every case does not suggest that the instructions are legally improper in and of themselves in any given case.