******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# WILLIE J. COLEMAN *v.* COMMISSIONER OF CORRECTION
## (AC 47279)

Cradle, C. J., and Elgo and Pellegrino, Js.

*Syllabus*

The petitioner, who previously had been convicted of murder, appealed, on the granting of certification, from the habeas court's judgment denying his petition for a writ of habeas corpus. He claimed, inter alia, that the court incorrectly concluded that *McCoy* v. *Louisiana* (584 U.S. 414), in which the United States Supreme Court recognized a criminal defendant's right under the sixth amendment to the United States constitution to autonomy in deciding the fundamental objectives of his defense, was not implicated under the facts of this case. *Held*:

The habeas court correctly concluded that *McCoy* was inapplicable to the petitioner's case, as, although the petitioner's counsel at his criminal trial conceded the petitioner's guilt to the crime of criminally negligent homicide during closing argument, the court found that counsel had discussed with the petitioner his intention to concede the petitioner's guilt to criminally negligent homicide, that decision was consistent with the theory of defense, and the petitioner never objected to that concession and consistently admitted that he stabbed the victim but did not do so with the intent to kill her.

The petitioner's claim of ineffective assistance of counsel was unavailing, as the petitioner failed to show that his trial counsel's concession of his guilt to criminally negligent homicide was not objectively reasonable and, thus, the petitioner failed to demonstrate deficient performance.

Argued November 18, 2025—officially released April 21, 2026

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Bhatt, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed*.

*Hope J. Estrella*, deputy assistant public defender, for the appellant (petitioner).

*Rocco A. Chiarenza*, senior assistant state's attorney, with whom, on the brief, were *Sharmese L. Walcott*, state's attorney, and *Angela R. Macchiarulo*, supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

CRADLE, C. J. In this certified appeal, the petitioner, Willie J. Coleman, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus in which he sought to vacate his conviction of murder in violation of General Statutes § 53a-54a.[1] On appeal, the petitioner claims that the habeas court incorrectly concluded that **(1)** *McCoy* v. *Louisiana*, 584 U.S. 414, 138 S. Ct. 1500, 200 L. Ed. 2d 821 (2018), which recognized a criminal defendant's right under the sixth amendment to the United States constitution to autonomy in deciding the fundamental objectives of his defense, was not implicated under the facts of this case and **(2)** his trial counsel did not render ineffective assistance of counsel. We disagree and, accordingly, affirm the judgment of the habeas court.

The following facts, as set forth by the habeas court, *Bhatt, J.*, and procedural history are relevant to the petitioner's claims on appeal. The court, in its memorandum of decision, set forth portions of our Supreme Court's decision that summarized the underlying facts that the jury reasonably could have found at the petitioner's criminal trial. "On July 8, 2008, at approximately 5:30 p.m., the [petitioner] placed a 911 call from his apartment reporting that he had 'just stabbed [his] girlfriend' and requesting an ambulance. At the time the [petitioner] placed the call, [the petitioner's girlfriend, Twonna] White was still conscious. In response to questions from the 911 operator as to White's condition, the [petitioner] stated that he had '[s]tabbed her in the back and in the front a couple of times' and that, with respect to the means by which he had inflicted these wounds, 'it was a fork and . . . then I used a knife too.' The operator inquired as to what had caused the incident, and the [petitioner] explained: 'Well, she want to keep

---

[1] General Statutes § 53a-54a provides in relevant part: "(a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress, or deception . . . .

"(c) Murder is punishable as a class A felony . . . ."

on talking about all the people that she got coming in my house, and I'm tired of it, had enough of it, all the people that she fucking around with, and I'm tired of it.' Following a comment by the operator indicating that police officers were on their way, the [petitioner] stated: 'I'm not going nowhere. You know, I did it, you know. I ain't scared of nothing. . . . I'm just tired, that's all it is. I got tired . . . . I just got home from the court . . . pay the fine and all that.[2] I'm sick of it. Enough is enough. Enough is enough.'

"When Officers Aaron Boisvert and Robert Quaglini of the Hartford [P]olice [D]epartment arrived on the scene, the [petitioner] again acknowledged to Boisvert that he had stabbed White. Boisvert handcuffed the [petitioner] . . . placed him on a bed and then went into the kitchen to aid White. A two-pronged grill fork and a black handled steak knife were lying near White's body in plain view. While Boisvert attempted to ascertain the location of White's wounds, he heard the [petitioner] say that he was tired of White bringing other men to the apartment and then telling the [petitioner] about those sexual encounters.

"The [petitioner] reiterated the impetus for the attack in voluntary statements to Quaglini while being escorted to the police cruiser and to Detective Seth Condon at the police station. The [petitioner] told Quaglini that he and White had been drinking and that '[s]he got to my head. She started telling me about all the guys she was fucking and I stabbed her with a fork and a knife . . . .' The [petitioner] later told Condon that, after the drinking and White's boasts of infidelity, he had 'snapped' and stabbed her, but had not meant to hurt or kill her.

"While these events transpired, White received medical aid, including chest and abdominal surgery, but she did not survive. The medical examiner's autopsy revealed that White had sustained the following external injuries: cuts on the back of two fingers on her left hand that

[2] "It appears from the record that the [petitioner] had paid a fine in connection with an offense committed by White for which she had been arrested." *State* v. *Coleman*, 304 Conn. 161, 164 n.1, 37 A.3d 713 (2012).

appeared to be 'defense wounds . . . where somebody might be trying to fend off a weapon'; superficial cuts on the back of her left hand and on the middle of her back; a pair of puncture wounds, consistent with a barbeque type fork, in the superficial layer of the skin in her back; a pair of scrapes on her left back; a deeper scrape to her left upper back; and a cut on her scalp. None of these wounds contributed to her death. The cause of death was a single stab wound in White's chest, from the front left of her breastbone into her heart. The examiner was unable to determine the sequence of the wounds.

"At trial, the court [*O'Keefe, J.*] agreed to the [petitioner's] request for the jury to be instructed on lesser included offenses to murder, acknowledging that there was evidence supporting the [petitioner's] contention that he did not intend to kill White, and his request for an instruction on the affirmative defense to murder of extreme emotional disturbance [(EED)]."[3] (Footnote in original.) *State* v. *Coleman*, 304 Conn. 161, 163–65, 37 A.3d 713 (2012).

In his closing argument, the petitioner's trial counsel, Attorney John R. Williams, argued that the state had failed to meet its burden of proving beyond a reasonable doubt that the petitioner acted with the requisite mental state to support a criminal conviction for murder and that the petitioner was instead guilty of the lesser included offense of criminally negligent homicide.[4]

---

[3] "The EED defense is set forth in General Statutes § 53a-54a (a), which provides in relevant part: '[I]t shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be . . . .' As our Supreme Court has explained, the EED defense has two elements: '(1) the defendant committed the offense under the influence of extreme emotional disturbance; and (2) there was a reasonable explanation or excuse for the defendant's extreme emotional disturbance.' " *Jan G.* v. *Commissioner of Correction*, 237 Conn. App. 115, 122 n.4, 350 A.3d 1156 (2026).

[4] General Statutes § 53a-58 provides in relevant part: "(a) A person is guilty of criminally negligent homicide when, with criminal negligence, he causes the death of another person . . . .

"(b) Criminally negligent homicide is a class A misdemeanor."

Williams also contended that, if the jury were to find that the state had proven the petitioner possessed the requisite intent for murder, then it should "turn to the issue of whether, by a lesser standard, [the petitioner had] shown [EED]." Williams thereafter addressed each of the lesser included offenses that the court would instruct the jury on, explaining why the intent element was not met for manslaughter in the first degree with intent to cause serious physical injury, manslaughter in the first degree by reckless indifference, or manslaughter in the second degree. Finally, Williams conceded the petitioner's guilt to the lesser included offense of criminally negligent homicide, contending that it was the only offense for which the intent element was met because "[a] person acts with criminal negligence with respect to a result when he fails to perceive a substantial and unjustifiable risk that such result will occur, and that's exactly what happened in this case." Williams argued "that blind rage, which was provoked by the victim . . . that blind rage caused him to fail to perceive anything except [the] blind rage that he was experiencing at that moment."

The court then instructed the jury on murder, manslaughter in the first degree, manslaughter in the second degree, criminally negligent homicide, and the defense of EED. The jury thereafter found the petitioner guilty of murder in violation of § 53a-54a. The court rendered judgment in accordance with the verdict and sentenced the petitioner to forty-five years of incarceration. Following his conviction and sentencing, the petitioner appealed his conviction to our Supreme Court, which, in turn, affirmed the judgment.[5] See *State* v. *Coleman*, supra, 304 Conn. 161.

On August 31, 2015, the petitioner filed a self-represented petition for a writ of habeas corpus.[6] After the petitioner was appointed counsel, he filed an amended

---

[5] On direct appeal to our Supreme Court, the petitioner "contend[ed] that the state offered insufficient evidence to prove beyond a reasonable doubt his intent to kill White, that the trial court improperly instructed the jury that it could infer such intent from the number of wounds he had inflicted on her and that an improper statement by the prosecutor in closing argument deprived him of a fair trial." *State* v. *Coleman*, supra, 304 Conn. 163. The court rejected each of these claims. Id.

[6] In his August 31, 2015 petition, the petitioner alleged that Williams provided ineffective assistance by failing to "bring up the illegal

petition on January 8, 2019, in which he claimed a violation of his constitutional right to autonomy under *McCoy* v. *Louisiana*, supra, 584 U.S. 414, and ineffective assistance of counsel under *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), on the basis, inter alia, of Williams' concession of the petitioner's guilt to the lesser included offense of criminally negligent homicide during closing argument without discussing it with the petitioner.[7]

The petitioner's claims were tried before the habeas court on June 6 and 23, 2023, during which the court heard testimony from both the

questioning of [the petitioner] without [his] *Miranda* rights being given to [him]." See *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). The petitioner did not renew this claim in his amended petition.

[7] In his amended petition, the petitioner also claimed ineffective assistance of counsel pursuant to *Strickland* v. *Washington*, supra, 466 U.S. 668, on the basis of Williams' alleged failures to adequately perform during the course of jury selection, to investigate and present mitigating evidence in his defense at trial and at sentencing, and to consult with and retain experts concerning the petitioner's mental health. The petitioner withdrew those claims at the habeas trial. The petitioner also asserted an ineffective assistance claim based on Williams' alleged failure to present defenses of mental disease and defect and EED, which he withdrew in his posttrial brief.

In addition, the petitioner asserted a count of ineffective assistance pursuant to *United States* v. *Cronic*, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984), on the basis of both Williams' concession of the petitioner's guilt to criminally negligent homicide and Williams' performance during jury selection. At the habeas trial, he withdrew his *Cronic* claim as it related to the concession. The court rejected the petitioner's remaining *Cronic* claim as it related to the issue of jury selection, and the petitioner has not challenged the court's determination on appeal.

Finally, in his habeas petition, the petitioner claimed a violation of his rights under article first, § 8, of the Connecticut constitution as well as rules 1.2 and 1.4 of the Connecticut Rules of Professional Conduct. Although the petitioner cited to the state constitution and the Rules of Professional Conduct in his posttrial brief, he did not brief any specific claim based on them before the habeas court. In addition, the court did not address them in its memorandum of decision. Because the petitioner has failed to brief a claim on appeal based on the state constitution or the Rules of Professional Conduct, or even cited to them in his appellate briefs, he has abandoned any such claim. See, e.*g*., *Ramos* v. *Commissioner of Correction*, 237 Conn. App. 372, 387–88,    A.3d    (2026) (deeming state constitutional claim abandoned where petitioner failed to brief it).

petitioner and Williams. On October 30, 2023, the parties submitted their respective posttrial briefs.

On November 27, 2023, the habeas court filed a memorandum of decision rejecting the petitioner's claims and denying his petition for a writ of habeas corpus. The court explained that the petitioner testified, inter alia, "that . . . Williams did not discuss the defense strategy with him, nor did they discuss the elements of the charged offenses or any lesser offenses." In addition, the petitioner "testified that . . . Williams did not discuss his closing argument with him and that [the petitioner] was not aware that . . . Williams was going to concede a lesser included offense during closing argument. [The petitioner] testified that he had not, at any point, conveyed to . . . Williams that he would be in agreement with conceding guilt to a lesser included offense."

The court also explained that "Williams discussed the theory of defense with [the petitioner]. According to . . . Williams, the only defense was . . . [EED] to reduce the charge to manslaughter. The defense was that it was a manslaughter committed in the heat of passion." The court further indicated that "Williams testified [inter alia] that he would have conceded to the jury that [the petitioner] was guilty of manslaughter because it was not in dispute that [the petitioner] stabbed and killed the victim. He discussed with [the petitioner] that they had to concede that [the petitioner] killed the victim in the heat of passion. He testified that he discussed with [the petitioner] that they would concede guilt to criminally negligent homicide and that decision was consistent with their theory of defense. [The petitioner] said 'not much' in response. [The petitioner] did not prohibit . . . Williams from arguing guilt on the lesser included offense, at no point stating that it had to be murder or nothing, nor did he object to that strategy during their discussions. Rather . . . Williams testified that their joint strategy was to aim for a conviction on manslaughter and argue for a lesser sentence."

The court expressly credited Williams' testimony and determined that Williams had "discussed with [the petitioner] that they would concede guilt to criminally negligent homicide and that decision was consistent with their theory of defense. [The petitioner] did not object to that strategy during their discussions." The court

therefore concluded that the circumstances "[fell] far short of the vociferous objection required to trigger the right to autonomy pursuant to *McCoy* . . . . Thus, the court [found] that *McCoy* [was] inapplicable." (Internal quotation marks omitted.) The court also rejected the petitioner's ineffective assistance claim, reasoning that the concession of guilt to criminally negligent homicide was "a valid strategic decision" to which the petitioner had acquiesced and that "[t]here was no doubt that [the petitioner] stabbed the victim . . . [t]he only question was his intent in doing so." The court also concluded that the petitioner failed to demonstrate prejudice. The court thereafter granted the petitioner's certification to appeal, and this appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The petitioner first claims that the habeas court incorrectly concluded that *McCoy* was inapplicable to this case.[8] We disagree.[9]

[8] The petitioner also requests that this court exercise "its supervisory authority to require trial courts to canvass a defendant regarding concession to a crime in order to ensure that the objectives of *McCoy* are reached and that there has been a clear advisement of the decision to concede guilt." It is well settled that invocation of this court's "[s]upervisory authority is an extraordinary remedy that should be used sparingly. . . . Such powers should be invoked only when circumstances are such that the issue at hand, while not rising to the level of a constitutional violation, is nonetheless of utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole. . . . Thus, we are more likely to invoke our supervisory powers when there is a pervasive and significant problem . . . or when the conduct or violation at issue is offensive to the sound administration of justice . . . ." (Citations omitted; internal quotation marks omitted.) *Lisboa* v. *Commissioner of Correction*, 236 Conn. App. 23, 38, 347 A.3d 984 (2025), cert. granted, 354 Conn. 911, 350 A.3d 1141 (2026).

Our Supreme Court in *Grant* v. *Commissioner of Correction*, 345 Conn. 683, 287 A.3d 124 (2022), declined a request to exercise its supervisory authority to adopt a "retroactive, prophylactic rule requiring criminal defense attorneys to obtain a defendant's written consent to concede guilt to an offense as part of their trial strategy," because it was "not persuaded that traditional protections are insufficient for ensuring that criminal defense attorneys adequately apprise defendants of their intent to concede at trial guilt as to an offense." Id., 699 n.9. For the reasons expressed in *Grant*, we likewise decline the petitioner's invitation to exercise our supervisory authority in this case.

[9] The parties disagree about whether the United States Supreme Court's holding in *McCoy* v. *Louisiana*, supra, 584 U.S. 414, applies retroactively.

Our Supreme Court has explained that, "[i]n *McCoy*, the United States Supreme Court recognized a criminal defendant's sixth amendment right to autonomy in deciding the objectives of his defense and concluded that the right prohibits defense counsel from admit[ting] a client's guilt of a charged crime over the client's intransigent objection to that admission. . . . When a client expressly asserts that the objective of his defense is to maintain innocence of the charged criminal acts, his lawyer must abide by that objective and may not override it by conceding guilt." (Citation omitted; internal quotation marks omitted.) *Grant* v. *Commissioner of Correction*, 345 Conn. 683, 694–95, 287 A.3d 124 (2022). "[T]he sixth amendment right to autonomy is implicated only when, *over a defendant's express objections*, counsel concedes the defendant's guilt to a charged offense. This limitation on the right to autonomy is evident throughout the [United States Supreme] [C]ourt's decision [in *McCoy*] but especially in the court's restatement of the issue presented: whether it is unconstitutional to allow defense counsel to concede guilt *over the defendant's intransigent and unambiguous objection*." (Emphasis added; emphasis in original; internal quotation marks omitted.) Id., 698.

On appeal, "[a]lthough a challenge to the facts found by the habeas court is reviewed under the clearly erroneous standard . . . whether those facts constituted a violation of the petitioner's rights under the sixth amendment is a mixed question of law and fact subject to this court's plenary review." (Citation omitted.) Id., 694.

Here, the petitioner argues, as he did before the habeas court, that Williams never discussed with him his intention to concede the petitioner's guilt to criminally negligent homicide. This argument, however, dispositively undermines the petitioner's *McCoy* claim in that, logically, the petitioner could not meet the requirement set

Because we conclude that *McCoy* is inapplicable to the facts of this case, we need not reach the issue of retroactivity. See *Grant* v. *Commissioner of Correction*, 345 Conn. 683, 686 n.2, 287 A.3d 124 (2022).

forth in *McCoy* that he object to such a concession if he was never advised by counsel of his intention to make it.[10] Indeed, the petitioner has not challenged the habeas court's findings that he did not object to the concession and that he consistently has admitted that he stabbed the victim, but that he did not do so with the intent to kill her.[11] The petitioner's claim that the habeas court erred in finding that *McCoy* was inapplicable to this case is unavailing.

## II

The petitioner also claims that the court incorrectly concluded that Williams did not provide ineffective assistance by "arguing both that [the petitioner] had no intent to kill [the victim] by conceding criminally negligent homicide and that [the petitioner] had the intent to kill [the victim] but should not be considered as culpable

[10] For this reason, our Supreme Court suggested in *Grant* that, if defense counsel fails to get a defendant's approval before conceding guilt to a charge, such a failure properly is challenged via an ineffective assistance of counsel claim, *not as a stand-alone McCoy violation*. See *Grant* v. *Commissioner of Correction*, supra, 345 Conn. 698–99 n.8; see also *White* v. *Commissioner of Correction*, 236 Conn. App. 67, 83 n.9, 347 A.3d 214 (2025) (in cases in which counsel failed to give defendant notice of intent to make concession of guilt, proper lens for analysis is ineffective assistance of counsel claim, not freestanding constitutional claim), cert. granted, 354 Conn. 901, 348 A.3d 813 (2026).

[11] For this reason, we also reject the petitioner's claim that "Williams violated [his] sixth amendment right to assistance of counsel because . . . Williams never gave a clear advisement of the proposed strategy or the potential benefits of such a strategy with [the petitioner]." Moreover, the habeas court expressly found, to the contrary, that Williams' strategy to concede guilt to the lesser included offense was sound and that the petitioner agreed with it because "[t]here was no doubt that [the petitioner] stabbed the victim. The only question was his intent in doing so." In challenging the court's conclusion, the petitioner contends that the court erred in finding that Williams properly advised him. To the extent that the petitioner contends that the court erroneously credited Williams' testimony that he properly advised the petitioner, it is axiomatic that the habeas court's credibility determinations are "unassailable." (Emphasis omitted; internal quotation marks omitted.) *Lopez* v. *Commissioner of Correction*, 232 Conn. App. 825, 828, 337 A.3d 1211, cert. granted, 353 Conn. 902, 341 A.3d 957 (2025). This claim therefore warrants no additional discussion.

due to his heightened emotional state, leading the jury to be confused as to what the defense was." We disagree.

It is well settled that, "[t]o succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington*, [supra, 466 U.S. 687]. *Strickland* requires that a petitioner satisfy both a performance prong and a prejudice prong. . . . To satisfy the performance prong, the petitioner must establish that his counsel made errors so serious that [counsel] was not functioning as the counsel guaranteed [to] the [petitioner] by the [s]ixth [a]mendment. . . . The petitioner must thus show that counsel's representation fell below an objective standard of reasonableness considering all of the circumstances. . . .

"To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . In its analysis, a reviewing court may look to the performance prong or to the prejudice prong, and the petitioner's failure to prove either is fatal to a habeas petition." (Internal quotation marks omitted.) *White* v. *Commissioner of Correction*, 236 Conn. App. 67, 90–91, 347 A.3d 214 (2025), cert. granted, 354 Conn. 901, 348 A.3d 813 (2026).

We stress that "[j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable . . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; *that is, the*

[*petitioner*] *must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy*. . . . Indeed, our Supreme Court has recognized that [t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. . . . [A] reviewing court is required not simply to give [the trial attorney] the benefit of the doubt . . . but to affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as [he] did . . . ." (Emphasis in original; internal quotation marks omitted.) *Morales* v. *Commissioner of Correction*, 220 Conn. App. 285, 305–306, 298 A.3d 636, cert. denied, 348 Conn. 915, 303 A.3d 603 (2023).

In other words, "[a] petitioner will not be able to demonstrate that trial counsel's decisions were objectively unreasonable unless there was no . . . tactical justification for the course taken. . . . [C]ounsel has wide latitude in deciding how to best represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strateg[ies] at that stage." (Citation omitted; internal quotation marks omitted.) Id., 313. "Moreover, counsel's decision regarding which defense theory to emphasize . . . is a quintessential decision of trial strategy and professional judgment that *Strickland* considers to be objectively reasonable." *Jordan* v. *Commissioner of Correction*, 341 Conn. 279, 309, 267 A.3d 120 (2021).

"On appeal, [a]lthough the underlying historical facts found by the habeas court may not be disturbed unless they [are] clearly erroneous, whether those facts constituted a violation of the petitioner's rights [to the effective assistance of counsel] under the sixth amendment is a mixed determination of law and fact that requires the application of legal principles to the historical facts of [the] case. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous

standard." (Internal quotation marks omitted.) *White* v. *Commissioner of Correction*, supra, 236 Conn. App. 91.

In rejecting the petitioner's ineffective assistance claim, the court explained that, at the habeas trial, Williams testified that he "discussed the theory of defense with [the petitioner]. According to . . . Williams, the only defense was . . . [EED] to reduce the charge to manslaughter. The defense was that it was a manslaughter committed in the heat of passion. The state agreed that this was a manslaughter, but because of [the petitioner's] prior record, they wanted the maximum sentence. [The petitioner] did not want to resolve the matter via plea because of the twenty year sentence offered, but he was open to the charge of manslaughter. . . . Williams discussed the possible convictions to [the petitioner] and the sentences he could receive via plea or after conviction by the jury. . . . Williams believed that [the petitioner] understood his options and the advice provided to him." The court concluded that the petitioner had "not proven that . . . Williams performed deficiently by conceding guilt to a lesser included offense during closing argument. Based on the facts and circumstances of the case, it was a valid strategic decision. There was no doubt that [the petitioner] stabbed the victim. The only question was his intent in doing so. In addition, the evidence shows that this strategy was discussed with [the petitioner] and he acquiesced to it. Further, [the petitioner] has not proven any prejudice. Indeed, almost all of [the petitioner's] argument on this issue in his posttrial brief [was] focused on . . . Williams' deficient performance. Even assuming deficient performance, there [was] no evidence from which the court [could] conclude that, but for the concession to negligent homicide, there [was] a reasonable likelihood of a different outcome."

On appeal, the petitioner argues that the court incorrectly concluded that the petitioner had failed to establish that Williams performed deficiently. Specifically, the petitioner argues that, "[b]y putting forth both theories in the closing argument and conflating the two . . .

Williams was putting forward an objectively unreasonable defense" and confused the jury. We disagree.

As noted by the habeas court, the petitioner has never contested that he stabbed the victim and, therefore, "the only question was [the petitioner's] intent in [stabbing White]." By conceding the petitioner's guilt to negligent homicide and arguing EED, Williams made a valid tactical decision by offering the jury two potential pathways to find the petitioner not guilty of murder. Williams argued principally that the state had failed to meet its burden of proving beyond a reasonable doubt that the petitioner possessed the requisite intent for murder and that the petitioner was, instead, guilty of criminally negligent homicide because he "failed to perceive a substantial and unjustifiable risk." Williams argued, in the alternative, if the jury found that the petitioner intended to kill the victim, then it should reach the affirmative defense of EED. In so arguing, Williams maintained throughout his closing argument that the petitioner lacked the required intent for murder, which, as found by the habeas court, was consistent with Williams' testimony at the habeas trial that the petitioner and his "joint strategy was to aim for a conviction on manslaughter and argue for a lesser sentence," not to maintain the petitioner's complete innocence and seek full acquittal.

The petitioner nevertheless contends that the court improperly concluded that Williams did not perform deficiently because, "by arguing both that [the petitioner] had no intent to kill White by conceding criminally negligent homicide and that [the petitioner] had the intent to kill White but should not be considered as culpable due to his heightened emotional state [by pursuing the defense of EED], [Williams led] the jury to be confused as to what the defense was." The petitioner's claim is based on his erroneous belief that, by pursuing a defense of EED, Williams "was arguing to the jury that all of the elements of murder—specific intent to cause death and causing the death of White—were proven . . . ." It is well settled, however, that "[a] defendant does not concede

the elements of murder by advancing an affirmative defense of mental disease or defect, or [EED]. The state still had to prove that the petitioner had the required intent to kill in order to convict him of murder." *Zachs* v. *Commissioner of Correction*, 205 Conn. App. 243, 260, 257 A.3d 423, cert. denied, 338 Conn. 909, 258 A.3d 1279 (2021).

Moreover, Williams was clear throughout his closing argument that, by asserting the affirmative defense of EED, he was not conceding the petitioner's intent to commit murder. For example, Williams argued to the jury that, "[i]f you find that the prosecutor has proven beyond a reasonable doubt the essential elements of the crime of murder, then you turn to the issue of whether, by a lesser standard, we've shown [EED]. *But you only do that if you find that the elements of murder have been proven*." (Emphasis added.) Similarly, he later argued to the jury that "you don't need to get to the affirmative defense *if you agree that he didn't intend to commit murder*." (Emphasis added.) We therefore conclude that the petitioner has failed to show that Williams' concession of the petitioner's guilt to criminally negligent homicide was not objectively reasonable and agree with the court that the petitioner has failed to demonstrate deficient performance.[12] Accordingly, the petitioner's ineffective assistance claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[12] Because we agree with the habeas court that the petitioner failed to establish that Williams performed deficiently by conceding the petitioner's guilt to criminally negligent homicide, we need not also address the petitioner's challenge to the court's determination that he failed to prove prejudice. See *White* v. *Commissioner of Correction*, supra, 236 Conn. App. 91.